JOSIAH D. RICHARDS *vs.* ATTLEBOROUGH NATIONAL BANK.

Bristol. October 25, 1888. — January 2, 1889.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Winding up of National Bank — Transfer of Shares of Stock —
Submission to Arbitration — Revocation.*

Shares of stock in a national bank cease to be transferable as such upon its proceeding, at the end of the original period for which it was organized, to wind up its affairs under the U. S. St. of July 12, 1882, § 7; and only stockholders of record at that time have the right to vote for directors to settle its affairs, or are eligible for election as such.

The existing directors of such a bank, who proceed without objection, no others being elected, to wind up its affairs, may submit to arbitration a claim made against it by one of their number, and such a submission is valid if the vote is unanimous, although he is present at the meeting when it is made; and directors subsequently elected, a majority of whom were not stockholders at the time the liquidation began, have no power to revoke the submission.

CONTRACT on an award. Trial in the Superior Court, without a jury, before *Lathrop*, J., who found for the defendant, and reported the case for the determination of this court, the report, so far as material, being as follows.

The defendant bank was organized on July 17, 1865, and was to have succession for a period of twenty years from its organization, or until July 17, 1885.

On June 22, 1885, the board of directors, which was duly elected on January 13, 1885, voted that the plaintiff, who was elected president of the defendant bank on April 13, 1885, should be compensated for various services rendered by him to the bank, as well as reimbursed for various expenditures. The directors, by a vote also passed on the same day, directed the cashier to notify the comptroller of the currency of the purpose of the bank to close up its affairs on July 17, 1885, to withdraw and sell the bonds held by the comptroller as security for its circulation, and to deposit with the comptroller a sufficient amount of legal tender to secure its circulation; and the cashier duly sent such notice. On July 15, 1885, the directors passed another vote, a copy of which was sent to the comptroller, authorizing him to withdraw the bonds deposited with the Treasurer of the United States for the purpose of having

them sold.  From July 17, 1885, until May, 1886, the directors, in liquidating the affairs of the bank, declared dividends amounting to one hundred and fifty-eight per cent on the par value of the shares of stock, and paid them to the stockholders.  The plaintiff having filed a claim against the bank for services rendered it, and for his expenses in connection therewith, the directors, on December 14, 1886, unanimously voted to refer the claim to arbitrators, and a submission in accordance with the vote was duly made.  The plaintiff resigned the office of president of the defendant bank on December 24, 1886, and his resignation was accepted.

By the defendant's articles of association, the regular annual election of directors was to be held each year on the second Tuesday of January, but no notice was given and no meeting held for that purpose in January, 1886, and the board of directors of 1885 continued to hold office.  A call was duly issued by the cashier of the defendant bank, who had also remained in office since his election on January 13, 1885, for an annual meeting of the stockholders to be held on January 11, 1887, and on that date such a meeting was held and a new board of five directors was chosen by ballot by representatives of a majority of all the shares of stock in the bank.  At the time of their election three of the directors so chosen owned no shares of stock in the bank, but immediately thereafter a transfer of ten shares of stock was made to each of them on the books.  The new directors, having duly qualified, met on the same day, and organized by electing E. Ira Richards as president, and John H. Peckham as clerk, and at once voted to rescind the vote of December 14, 1886, whereby the plaintiff's claim was submitted to arbitration.  On the same day Peckham sent a letter, signed by him as clerk, to the arbitrators, containing a copy of the vote of rescission, and requesting them to suspend all hearings and further action on the matter.  The new directors again met on January 13, 1887, and passed a vote authorizing Richards, the president, to execute any paper to revoke the submission to the arbitrators, and subsequently, on the same day, Richards sent to the arbitrators an instrument in writing, purporting to be such a revocation, and concluding as follows: " You are hereby notified that the directors of said bank have voted to revoke said submission, and have

authorized the undersigned, as president thereof, to execute this revocation in the name of and under the seal of said bank, which is hereby done. Witness the name and seal of said bank, this 13th of January, A. D. 1887. Attleborough National Bank, by E. Ira Richards, President." The signature to this paper was followed by a common seal of red paper, instead of by the regular seal of the bank, then in the cashier's possession. The arbitrators, at the time they received the clerk's notice and the alleged revocation from the president, had heard all the evidence, and had decided to make an award for the plaintiff, but had not determined the amount. They then proceeded to make up their award, signing it on February 14, 1887; and thereupon a demand was duly made by the plaintiff upon the cashier for the amount of the award, and payment was refused.

Upon these facts, the plaintiff contended, among other things, that the submission was valid, and that the alleged revocation was invalid; that the cashier had no power to call the stockholders' meeting of January 11, 1887; that the stockholders of a bank had no right or power, after the expiration of its charter, to hold a meeting and elect new directors, or to perform any act whatever as corporators; that they ceased to be stockholders, as such, after that time; that no shares of stock could be transferred as such, and that the alleged revocation was also invalid for want of the regular corporate seal. The defendant contended that, if the submission was valid, it was duly revoked before the award was made.

If the finding of the judge should have been for the plaintiff, the finding was to be set aside, and judgment entered for the plaintiff for the amount of the award; otherwise, judgment was to be entered for the defendant on the finding.

*E. Avery & J. E. Pond*, for the plaintiff.

*E. H. Bennett*, for the defendant.

DEVENS, J. The Attleborough National Bank was organized on July 17, 1865, and by law was to have succession for the period of twenty years from its organization. As the law then stood, its existence as a legal entity would have ended on July 17, 1885. Previously to the expiration of this time, on July 12, 1882, the United States statute of that date was enacted, the principal object of which was to enable the associations formed

under the United States banking law to prolong their corporate existence for an additional period. The seventh section of the act applied to such associations as did not desire to avail themselves of this privilege, enabled them to continue their business in the ordinary way until the twenty years had expired, and then provided a mode by which their affairs should be finally closed, which was by extending their franchise for this sole purpose. This extension necessarily implies a continuance of their corporate existence, although with strictly limited powers.

The section is as follows: "National banking associations whose corporate existence has expired or shall hereafter expire, and which do not avail themselves of the provisions of this act, shall be required to comply with the provisions of sections fifty-two hundred and twenty-one and fifty-two hundred and twenty-two of the Revised Statutes in the same manner as if the shareholders had voted to go into liquidation, as provided in section fifty-two hundred and twenty of the Revised Statutes; and the provisions of sections fifty-two hundred and twenty-four and fifty-two hundred and twenty-five of the Revised Statutes shall also be applicable to such associations, except as modified by this act; and the franchise of such association is hereby extended for the sole purpose of liquidating their affairs until such affairs are finally closed." The defendant bank took all necessary steps to avail itself of the provisions of this section, and of the sections of the United States Revised Statutes referred to therein (which need not be more particularly recited), having determined to close its business and not to avail itself of the right to continue it for the additional term of twenty years.

It is the contention of the plaintiff, that, at the expiration of the twenty years, the corporation as such was wholly dissolved; that it had a nominal existence by virtue of its charter for the purpose of closing its affairs; that it could not elect officers as directors, but could simply appoint agents to liquidate its affairs; and failing to do this, that its directors, as they existed at the expiration of the twenty years, could close its affairs with the powers of liquidating agents. How such agents could be appointed or chosen, unless by a meeting of the stockholders called by virtue of the corporate powers, he does not point out. This contention therefore is, in substance, that, as the corpora-

tion is utterly dissolved, those who, as directors, find themselves in possession of the assets may manage them at their own discretion.

The right to elect directors and such other officers as are usually chosen by a business corporation is a part of the corporate franchise. When the franchise is extended, although for a limited purpose, the corporation may exercise all the powers originally conferred upon it which are appropriate for that purpose, among which is the election of directors. The right to manage its own affairs in closing them belongs to the bank, through the stockholders, and not to those who by accident are found as directors in possession. The act to be done has been compared by Mr. Justice Morton to the administration of an estate. *Crease* v. *Babcock*, 23 Pick. 334. No doubt it could have been provided that the president of the bank or the directors last in office might perform it, but it has been deemed wiser to prolong the corporate existence, or, to use the exact words of the statute, to extend the franchise. Were full force, indeed, to be given to the plaintiff's contention, and were the corporation to be held to be actually dissolved, it would be fatal to his action; for, whatever remedies might exist against stockholders or against the property formerly belonging to the corporation, certainly no judgment could be rendered against a non-existent corporation, any more than against a deceased person. *Thornton* v. *Marginal Freight Railway*, 123 Mass. 32. *National Bank* v. *Colby*, 21 Wall. 609, 615. The corporation can, however, still sue and be sued as an existing corporation. *National Bank* v. *Insurance Co.* 104 U. S. 54. In the liquidation of its affairs, the stockholders must have the right, through proper officers elected by them, to direct the prosecution or the settlement of suits.

At the time of the expiration of the twenty years, on July 17, 1885, a board of directors, of which the plaintiff was president, was in existence. There was no election on the second Tuesday of January, 1886, the day fixed by the articles of association, and no meeting was called or notified for that purpose. The U. S. Rev. Sts. § 5145, provide: "The affairs of each association shall be managed by not less than five directors, who shall be elected by the shareholders at a meeting to be held at

any time before the association is authorized by the comptroller of the currency to commence the business of banking; and afterward at meetings to be held on such day in January of each year as is specified therefor in the articles of association. The directors shall hold office for one year, and until their successors are elected and have qualified." During the years 1885 and 1886, these directors continued to settle the affairs of the bank, and made dividends from its assets to the stockholders, amounting in all to one hundred and fifty-eight per cent on the capital stock.

In thus proceeding to wind up the affairs of the bank, they were in the exercise of their proper duty, nor was any objection made on behalf of the stockholders until after December 14, 1886, when the directors on behalf of the bank entered into a submission to arbitrators of a claim made by the plaintiff against it. As they were lawfully engaged in winding up the affairs of the bank, such a submission was within their powers. *Alexandria Canal Co.* v. *Swann,* 5 How. 83, 85. Nor do we think this submission was invalidated by the presence of the plaintiff, as it was made by a unanimous vote of the directors. The arbitrators met, took testimony in the matter, the plaintiff having then resigned from the board of directors, and on February 14, 1887, rendered an award which is that declared on. On January 11, 1887, at a meeting of stockholders, five other persons were chosen as directors, who, after organizing by the choice of E. Ira Richards as president, voted to revoke the submission of December 14, 1886. A notice to this effect, and a copy of this vote, were on the same day sent to the arbitrators, signed by John H. Peckham, a director then chosen as clerk. On January 13, 1887, a notice of revocation of the submission was signed by E. Ira Richards as president, and sealed with a common paper seal as the seal of the bank, and was sent to the arbitrators, who had at this time heard the evidence, but had not agreed on the amount of the award.

Unless there was a legal election of a new board of directors, the old board was not displaced, nor could its action in entering upon a submission have been revoked. The questions whether the cashier, by whom the stockholders' meeting was notified, could properly have given this notice, whether the proceedings

at the meeting itself were regular, and whether the attempted revocation of the submission was formally made and properly notified to the arbitrators, have all been fully argued. We shall not have occasion to discuss these, because, in our view, three of the persons who constituted a majority of the new board, and without whom it could have no legal existence, were not eligible (not being stockholders) as directors, and were not made so by the attempted transfer of stock to them. Every director must own at least ten shares of stock in his own right in the association in which he is a director. If he ceases to own them he becomes disqualified, and his place is to be vacated. U. S. Rev. Sts. § 5146.

This qualification is not dispensed with when the franchise is extended merely to close the affairs of the bank. If the stock ceased to be negotiable, as such, when the bank had no further right to do the business for which it was organized, and if a stockholder could no longer make another a member of the corporation, relieving himself from his responsibilities as such, imposing these upon another as well as giving to another the full rights of a stockholder, it would follow that, while stockholders might continue to choose directors, the right to vote, and the choice, would necessarily be limited to those who were stockholders at the time when the liquidation commenced.

The seventh section of the U. S. St. of July 12, 1882, heretofore quoted, makes §§ 5221 and 5222 of the U. S. Revised Statutes, which relate respectively to the notice to be given and to the deposit of money to redeem circulation, and §§ 5224 and 5225, which relate to the reassignment of bonds and to the redemption and destruction of notes, applicable, so far as they may appropriately be so, to any bank closing its affairs by virtue of that section, as if the stockholders had voted to go into voluntary liquidation under § 5220. When a corporation is dissolved, and absolutely ceases to exist, that there can be no transfer of stock as such would, we presume, be conceded. When liquidation commences, all that is left to the stockholder is the right to a share in the assets, or the sum produced therefrom proportional to his holding, while in the case of national banks he is subjected to a limited proportional liability for the debts the bank may have incurred. The equitable interest which he may

have in the funds held by trustees, directors, or receiver, settling the affairs of the corporation on behalf of the stockholders, may be assigned subject to the rights of creditors or the claims of the bank upon them, but such equitable assignee does not become a stockholder. When, after the expiration of the term for which the bank was chartered to do business, its existence is prolonged and its franchise "extended" simply to collect its dues, pay its debts, and divide what remains among its shareholders, the same result must follow. *Crease* v. *Babcock*, 23 Pick. 334, 345.

The reasons for making the stock, as such, transferable, and allowing the purchaser by virtue of his purchase to become a member of the corporation, cease to exist when there is no profit to be made, no business to be done, and when the property of the bank and its liabilities are fixed, and nothing remains but the adjustment of these. Whether the liquidation of the affairs of the bank be voluntary or involuntary, or whether it proceeds under the authority given to continue the bank in existence in order to close its affairs, it is necessarily implied that the respective rights, not only of the creditors and debtors of the bank, but of the stockholders, are to be determined as of the time when it commences. Indeed, were the stock, as such, to continue transferable, serious embarrassments would arise. Where stock is sold in the ordinary course of business, and so transferred, it is not important to the purchaser whether the bank has or has not claims against the stockholder so transferring stock. But when the bank is in liquidation, and when all to which the stockholder is entitled is his proportion of the assets, the claims which the bank may hold against him are a proper offset to those which he may hold against it by virtue of his ownership of stock. . He cannot, therefore, place another in the position of a stockholder, even if he may invest him with such rights as he himself equitably may have.

Again, the responsibilities of a stockholder in a national bank are serious. Section 5151 provides: "The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof,

in addition to the amount invested in such shares." When any banking association shall have gone into liquidation under the provisions of § 5220, this liability may be enforced by any creditor of the association by bill in equity in the nature of a creditor's bill. *Richmond* v. *Irons*, 121 U. S. 27, 54.

While the transfer of the stock in a national bank honestly made while the bank is in operation will substitute the transferee for the original stockholder, relieving the latter from his responsibilities and imposing them on the purchaser, it has often been held that, if such transfer was made to an irresponsible person, with a view of avoiding liability, and with knowledge that the bank was in failing circumstances, it was a fraud, and the party thus transferring would be held to all the obligations of a stockholder. *National Bank* v. *Case*, 99 U. S. 628. *Bowden* v. *Johnson*, 107 U. S. 251.

When a bank is in liquidation, the liability of the stockholder for the debts of the corporation has been fixed. If there is a debt due from the bank, he cannot transfer to any one else his liability to pay that debt, so as to affect the creditor or subject him, in seeking such remedies as he may have against the stockholders, to any examination beyond the list of those who were so when the liquidation commenced. No further debts can be contracted thereafter, nor any transaction made except such as result by implication from the duty of closing up its affairs. While the embarrassments that would arise from holding the stock of a bank transferable after it has once gone into liquidation are manifest, no reason incidental thereto exists why such stock should continue transferable. In the case at bar, when the transfer of stock on which the defendant relies took place, the affairs of the bank had been nearly closed; one hundred and fifty-eight per cent had been paid on the stock, and presumably but a small sum remained to be divided. As the right to elect directors was, in our view, confined to those who were stockholders when the liquidation commenced, and as only such could be elected, it follows that there was no valid election of a new board of directors (three of those chosen being ineligible), and therefore there was no valid revocation of the submission to arbitration of the plaintiff's claim. By the terms of the report, there should be                    *Judgment on the award.*