ELIZABETH G. HUGHES, Plaintiff, *v.* THE COUNTY OF MONROE, Defendant.

*Quasi corporations — responsibilities of — duty of a county to care for its insane — not liable for personal injuries sustained, through its negligence, by an employee in an asylum maintained by it.*

*Quasi* corporations created by the Legislature for purposes of public policy are not responsible for the neglect of duties enjoined on them, unless a right of action therefor is given by statute, and where a county of the State is engaged in the performance of a duty imposed upon it by statute, to wit, the support and care of its insane, which is a duty imposed upon every county of the State, it can discharge such duty, either by employing the State to care for its insane, or by caring for them itself in an asylum within its own borders. In either case, such county is discharging a duty imposed upon it by law, and is not liable in damages for the personal injuries sustained by a person employed in such asylum, by reason of the failure of the persons in charge thereof to properly instruct such employee in regard to her duties in respect to certain machinery therein, through the operation of which she sustained such injuries.

MOTION by the defendant, The County of Monroe, for a new trial on a case containing exceptions, ordered to be heard at the General

Term in the first instance, upon the verdict of a jury in favor of the plaintiff, rendered after a trial at the Monroe Circuit.

*Eugene Van Voorhis*, for the plaintiff.

*F. E. Drake*, for the defendant.

Lewis, J. :

This action was commenced on the 31st of August, 1892, against the board of supervisors of Monroe county, to recover damages for personal injuries sustained by the plaintiff while she was employed at the Monroe County Insane Asylum, caused by the alleged negligence of the defendant, on the 11th of February, 1891.

After the commencement of the action, by virtue of an order, the summons and complaint were amended by striking out the "Board of Supervisors of Monroe County" as defendant, and inserting as defendant "The County of Monroe."

The plaintiff was engaged, at the time of receiving her injuries, in removing wax from the main cylinder of a steam ironing machine belonging to the defendant, and being used in said asylum, and which was at the time in motion. Her hands and arms were drawn in between the rollers of the machine and were quite seriously injured.

The plaintiff's contention is that the negligence of the defendant consisted in the fact that those in charge of the asylum did not give her proper instructions as to the management of the machine. It is a question of considerable doubt whether the plaintiff succeeded in showing herself free from negligence contributing to her injuries.

The position of the rollers of the machine, and their manner of operation when in motion, were plainly visible to the plaintiff, and the danger of her hands being caught between the rollers when they were in motion must have been apparent to her; she testified that she saw the position of the rollers, their distance from each other; that if she had stopped to think she would have known that if anything got into the machine that was thicker than the space between the rollers it would get pinched. She was, at the time, twenty-four or twenty-five years of age, and had lived nearly all her life in the country upon a farm, and must be assumed to

have had the common intelligence and experience that girls possess who are brought up among the ordinary affairs of farming life.

But, from the view we have taken of this case, it will not be necessary to consider the question of the plaintiff's contributory negligence, for we are of the opinion that the defendant was not liable to the plaintiff for the negligence of those in charge of the asylum.

It is provided by chapter 82 of the Laws of 1863 that the insane asylum of the county of Monroe shall, after the passage of the act, be a separate and distinct institution from that of the Monroe county poorhouse; the board of supervisors was authorized to elect a warden and such other subordinate officers as the board deemed expedient, and appoint three persons who should constitute the board of trustees of the asylum; the warden was to be the chief officer of the asylum and to have the general management thereof under the supervision of the trustees.

The board of supervisors was required to cause to be levied and collected upon the taxable property of the county a sufficient sum annually to defray the expenses of the asylum; the money raised was required to be paid to the county treasurer to be used for the support of the insane of the county, and for no other purpose whatever.

The warden was given power to enter into contracts with any town or city in the county for the support of any insane person at the asylum, and to demand and receive from the State lunatic asylum any insane person who was then, or thereafter should become, chargeable to the county of Monroe, or to any town in said county, or any ward in the city of Rochester. The managers of the State lunatic asylum, upon such demand, were required to surrender to the board of supervisors any and every person who, at the time of making such demand, is in anywise chargeable to such city or town. By chapter 633 of the Laws of 1870, it was made the duty of the trustees of the said asylum, and they were empowered thereby, to hear and determine all questions and inquiries in relation to indigent lunatics and pauper insane who may be committed to said asylum, as to whether the maintenance of such lunatic and pauper insane is properly a charge on a specified town of Monroe county or upon the city of Rochester, or upon the county of Monroe, and

certify their decision to the board of supervisors, and the said board was required to cause the expenses of such maintenance to be levied against the said town, city or county and collected as the said board of trustees shall certify.

The board of trustees was given power to charge the estate of any lunatic who was not indigent or a pauper, or the person legally responsible for his maintenance, and collect the same and apply it to the maintenance of such lunatic.

It was conceded upon the trial that the asylum charged to the county, the city of Rochester and the several towns of the county, respectively, the year preceding the time of the accident, various sums for the board of patients, and that there was due from the State for that year moneys for the care of insane persons cared for by the institution who were chargeable to the State, and that there was due to the county moneys for the care of other insane persons, and that it received during said year for the price of articles produced upon the farm belonging to the asylum and sold, about $800. The defendant is one of the divisions of the State.

The obligation of caring for its insane was imposed upon it by law. It could have its insane cared for at the State asylum, or at an institution of its own, but under all circumstances it was required to bear the expense of caring for them. The expense thereof was paid by taxation. If any revenue was derived from the product of the farm, or from the patients who, in whole or in part, contributed to their own support, the amount collected by taxation was accordingly lessened by the amount of the sums thus received, but in no event was it contemplated that the county would derive any revenue from the asylum.

What it did in caring for its insane was for the benefit of its citizens as well as for all the other citizens of the State. The control and restraint of the insane and criminal classes are equally necessary for the welfare and safety of the community.

Restraining the insane of their liberty can only be justified as an exercise of police power. The laws authorizing such interference are classified among the laws concerning the internal police of the State. (R. S. part 1, chap. 20, tit. 3.)

Dillon on Municipal Corporations (4th ed., § 963) states the rule as to liability of counties for torts to be: "According to the pre--

vailing rule, counties are under no liability in respect of torts, except as imposed (expressly or by necessary implication) by statute.

"They are political divisions of the State, created for convenience."

A county was accordingly held not liable for an injury suffered by the plaintiff, who, when in attendance at court as a witness, was precipitated into the cellar of the court house in consequence of the negligent omission of an agent, or officers of the county, to guard or light a dangerous opening leading into the cellar.

Addison on Torts (Banks & Bros.' ed., p. 1298, § 1526) states the rule as follows: "A plainly marked distinction is made and should be observed between municipal corporations proper, as incorporated villages, towns and cities, and those other organizations, such as townships, counties, school districts and the like, which are established without any express charter or act of incorporation, and clothed with but limited powers.

"These latter political divisions are called *quasi* corporations, and the general rule of law is now well settled that no action can be maintained against corporations of this class by a private person for their neglect of public duty, unless such right of action is expressly given by statute."

*Ensign* v. *Board of Supervisors of Livingston Co.* (25 Hun, 20) was an action brought to recover damages sustained by injuries received in crossing a defective bridge over a river crossed by a public highway. The bridge was erected under an act of the Legislature, which declared that it should, when constructed, become a public bridge and be maintained at the expense of the county of Livingston.

It was held that the county was not liable, and the court stated the rule as follows: "There is a distinction in this respect between municipal corporations created by charter and vested by the government with a portion of its sovereign power for their peculiar benefit, and counties and towns which, like assembly and senatorial districts, are mere political divisions organized for the convenient exercise of portions of the political power of the State."

*Allamango* v. *Board of Supervisors of Albany Co.* (25 Hun, 551) was an action brought by the plaintiff, an inmate of the Albany County Penitentiary, to recover damages for an injury received to his hand while working with a circular saw. It was held that the

defendant, in building and managing the penitentiary, was engaged in a public duty which concerned the administration of criminal justice and was a mere instrumentality selected by the State, and that the rule was not different even if the county derived some profit incidentally from work performed at the institution.

The same rule is stated in *Hollenbeck* v. *The County of Winnebago* (95 Ill. 148).

It was held in *Summers* v. *Board of Commissioners of Davies County* (103 Ind. 262) that where the duties delegated to officers elected by public corporations are political or governmental, the relation of principal and agent does not exist; that the maxim of *respondeat superior* does not govern; that counties are mere instrumentalities of government and are not liable for an injury caused by the negligence of its commissioners in the selection of an unskilled or incompetent physician for the care of the poor.

Judge ELLIOT in his opinion says: " We have many cases holding that counties, townships and cities are instrumentalities of government, and it must, therefore, be true that where they act simply as the local government they act for the State. As the State is not liable for the acts of its officers, neither can the public corporations be held liable for the acts of its officers in the exercise of political powers.  *  *  *

" There is no more reason for holding counties liable for the negligence of the commissioners in the exercise of the governmental functions delegated to them, than there is for holding cities liable for the acts of their firemen or police officers, or for holding counties and townships responsible for the torts of sheriffs and constables. In providing for the care of the poor, a police power which resides primarily in the sovereignty is exercised, and neither the sovereign nor the local governing body to whom such a power is delegated is responsible for the misfeasance of its officers."

He refers with approval to the case of *Ogg* v. *City of Lansing* (35 Iowa, 495), which held that a city was not liable for the negligence of persons placed in charge of a small-pox hospital which the city had established.

In *Maxmilian* v. *Mayor* (62 N. Y. 164) Judge FOLGER points out the distinction between municipalities organized as a political division of the State for the purpose of discharging duties for the benefit of

all its citizens, and municipalities created to discharge duties for their own private interests.

In the former the agents are servants of the corporations and act for the public at large, and the corporation is not responsible for their acts or omissions, or the actions or omissions of the subordinates by them appointed. He refers, as authority for the rule, to *Eastman* v. *Meredith* (36 N. H. 284); *Fisher* v. *Boston* (104 Mass. 87); *Hafford* v. *New Bedford* (16 Gray, 297).

*Howard* v. *City of Worcester* (153 Mass. 426) was an action to recover damages for injuries received by the plaintiff through the alleged negligence of the city. The city was engaged in the construction of a school house. It had let the contract for removing a ledge of rocks, and the plaintiff was injured by the blasting of rock by the contractor.

Judge ALLEN says that the service in which the city was engaged was purely for the benefit of the public, and that the case falls within the general rule which exonerates it from responsibility for the consequences of its servants' negligence, and refers to *Neft* v. *Wellesley* (148 Mass. 487); *Kern* v. *City of Boston* (151 id. 505), and *Bates* v. *Westboro* (Id. 174).

The same rule is stated in the cases of *Buttrick* v. *City of Lowell* (1 Allen, 172); *Wheeler* v. *City of Cincinnati* (19 Ohio St. 19); *Brinkmeyer* v. *City of Evansville* (29 Ind. 187); *Toomey* v. *City of Albany* (38 N. Y. St. Repr. 91); *Smith* v. *Rochester* (76 N. Y. 506); *McKay* v. *City of Buffalo* (9 Hun, 401).

In *Benton* v. *Trustees of the City Hospital of Boston* (140 Mass. 13) the action was against the trustees of the city hospital for injuries received through the negligence of its superintendent.

Judge FIELD, in stating the reason why the plaintiff was not entitled to recover, says: "But we think that this is a hospital maintained by the city with such aid as may be derived from donations and the sums received from paying patients, and that the trustees are, in a sense, managing agents only in maintaining the hospital, subject to the laws and to the ordinances of the city. * * * The sums received from paying patients are by the ordinance to be credited to the account of the hospital and are, as stated in the exceptions, used in the support of the hospital.

"The trustees are a body created for the performance of a duty

which, under the authority of the statute, the city of Boston has assumed for the benefit of the public, and from the performance of which no profit nor advantage is derived either by the trustees or the city." (*Hill* v. *City of Boston*, 122 Mass. 344; *Ulrich* v. *City of St. Louis*, 112 Mo. 139; *Sherbourne* v. *Yuba Co.*, 21 Cal. 113; *Kincaid* v. *Hardin Co.*, 53 Iowa, 430.)

There are many other authorities sustaining the same doctrine, but it is not necessary to refer to more of them.

Plaintiff's counsel concedes the correctness of the general rule as above stated, but he seeks to distinguish this case from the cases cited; he claims that the defendant was managing this asylum for its own benefit and advantage, and calls our attention to the case of *Hannon* v. *The County of St. Louis* (62 Mo. 313) as an authority sustaining his contention. In that case the city of St. Louis had contracted with one Lukan to lay a water pipe along certain streets through the grounds of the county insane asylum, in order to supply the same with water, and the plaintiff was injured by the negligence of the defendant while in the employ of the contractor.

In discussing the case the court affirmed the doctrine that *quasi* corporations, created by the Legislature for the purpose of public policy, are not responsible for the neglect of duties enjoined on them unless the action is given by statute, but held that it had no application to a case where a special duty is imposed upon the *quasi* corporation with its consent, express or implied, and stated that, " In the case at bar the county of St. Louis was not engaged in the discharge of duties imposed alike by general law on all counties; duties whose performance, if neglected, might have been enforced by appropriate procedure for that purpose, but in the discharge of a self-imposed duty not enjoined by any law. And the test of the matter is this : that the county could not have been compelled to enter on the work for whose performance it contracted."

That case, we think, can be distinguished from this. Here the defendant was engaged in the performance of a duty imposed upon it by statute, to wit, the support and care of its insane, a duty imposed upon every county in the State. It could discharge that duty either by employing the State to care for its insane, or care for them in an asylum within its own borders.

In either case it was discharging a duty imposed upon it by law.

We are of the opinion that the plaintiff failed to make a case entitling her to a verdict; the defendant's motion for a new trial should be granted, with costs to abide the event.

DWIGHT, P. J., HAIGHT and BRADLEY, JJ., concurred.

Defendant's motion for a new trial granted, with costs to abide the event.