In the Matter of the Compulsory Settlement of WHITNEY B. WINTER ESTATE.

ESTATE OF CHARLES STERNS, Appellant; ESTATE OF WHITNEY B. WINTER, Respondent.*

Third Department, February 18, 1931.

* Revg. 136 Misc. 69.

*Patrick J. Tierney*, for the appellant.

*Horatio W. Thomas*, for the respondent.

HINMAN, J.  Charles Sterns, of Rutland, Vt., and Whitney B. Winter, of Keeseville, N. Y., entered into a written partnership agreement on September 25, 1899, to conduct a clothing store at Keeseville.  Sterns supplied the capital, originally $14,113.22, for which he received the partnership note without interest, and Winter was to run the business without putting in any cash.  Winter was to draw fifteen dollars per week and remit twenty-five dollars weekly to Sterns.  The partnership continued until Mr. Sterns died on October 30, 1911.  By written agreement between Winter and the executors of the Sterns estate, the partnership was continued until dissolved by Winter's death on April 16, 1927.  At that time the firm of Sterns & Winter still owed the estate of Sterns a balance of $12,088.26 on the original note.  Winter had remained in control of the business after the death of Sterns.  A Mr. Miller, one of Sterns' executors, kept in touch with the business by an occasional visit and through statements sent to him by Winter. Miller understood the clothing business, since he was in charge of a similar business conducted by Charles Sterns & Co., at Rutland, Vt., which was a partnership consisting of the estate of Charles Sterns and Miller.

Upon the death of Winter, Miller took possession of the assets of Sterns & Winter.  He consulted the attorney for the estate of Winter about calling in any of the Winter family or representatives in the taking of an inventory.  After reading the partnership papers, the attorney for the Winter estate stated that they had no financial interest in the business except in profits and losses and that Miller should go ahead and take the inventory.  On April 19, 1927, Miller took an inventory with the assistance of the bookkeeper and another clerk of Sterns & Winter and also two assistants brought by him from Rutland, one the bookkeeper of Charles Sterns & Co., and the other Arthur Sterns, son of Charles Sterns, deceased.  Miller alone fixed the prices of all merchandise in this inventory at what was, in his opinion, the present market

value. From April nineteenth to May fifth the store was closed to prepare for a clearance sale. From May fifth to thirtieth a clearance sale was conducted. To make the sale more attractive a quantity of goods was imported from the store of Charles Sterns & Co., of Rutland, during the progress of this sale and commingled with the goods of Sterns & Winter and sold with them. Record was kept of total purchases and sales during this sale but no record was made to show what part of the total sales was due to new merchandise nor how much of the new merchandise was still on hand at the end of the sale. No record was kept to show whether sales of old merchandise of Sterns & Winter brought more than the prices at which they were appraised by Miller.

During the May sale the Sterns executors sold the balance of the goods, including the new merchandise received from Rutland, to Arthur Sterns on the basis of fifty cents on the dollar of their inventory value at that time. That inventory was never completed because Arthur Sterns refused to consummate the sale. Miller then tried to dispose of the business in a lump sum to some local person at Keeseville but failed. He did not publish a notice of sale. On June 4, 1927, without further consulting the attorney or executrix of the Winter estate, Miller sold the business to Charles Sterns & Co., in which he and the estate of Charles Sterns were partners, at the value of the business on April 19, 1927, based upon the inventory values placed on the merchandise by Miller on that date and without any allowance for good will. Charles Sterns & Co. conducted the business from about June 6, 1927, to December, 1928, when it was discontinued and the merchandise then on hand, claimed to be unsalable, was shipped to their store in Rutland. It does not appear whether the business so conducted was operated at a profit or loss and Miller expressed a doubt whether the books would show it. There has been no other liquidation of the partnership of Sterns & Winter.

The estate of Charles Sterns presented to the executrix of the estate of Winter a claim in the sum of $6,220.99, claimed to be due to claimant as sole surviving partner. The executrix of the estate of Winter rejected the claim. The claim was tried in proceedings brought for the compulsory settlement of the accounts of the executrix of the estate of Winter. The surrogate has disallowed the claim on the ground that claimant has failed to establish to the satisfaction of that court that the business of Sterns & Winter was properly liquidated. This appeal is from the decree dismissing the claim.

At the close of the claimant's case, the attorney for the estate of Winter moved to dismiss the claim on the ground that such

a claim could not be presented against the estate of a deceased partner until the partnership business had been duly liquidated and on the further ground that the sale of the business to Charles Sterns & Co. did not constitute a proper liquidation. The surrogate held that there was no question that liquidation of the partnership may be ordered by a decree of the surrogate as an incident to the allowance or rejection of a claim by the surviving partner. (Surr. Ct. Act, § 40, as amd. by Laws of 1924, chap. 100; Id. § 211; *Matter of Raymond* v. *Davis*, 248 N. Y. 67.) The difficulty in the mind of the surrogate was that Miller, an executor of the Sterns estate and a partner with that estate in the business of Charles Sterns & Co., had so disposed of the business of Sterns & Winter as to prevent the Surrogate's Court from directing a proper liquidation. He says: "All of the testimony and all of the exhibits do not change the real essential fact in this case, namely, that this court is asked to approve a claim against Mr. Winter's estate for a sum representing the difference between the actual and known liabilities of the partnership, less the assets of the partnership, which are of unknown value, except for the appraisal of Mr. Miller alone acting for the surviving partner of Sterns & Winter, and for the purpose of making a sale to Charles Sterns & Co., a partnership consisting of Mr. Miller and the estate of Charles Sterns. * * * The rules of law, as above cited, forbidding a surviving partner to sell partnership assets to himself at a price fixed by himself are well established. To allow this claim would compel the approval of a sale which is clearly contra to the rules of law applicable to the duties of a surviving partner in liquidating a partnership." The surrogate is sustained as to these rules by the authorities cited by him, namely: Parsons Partnership (4th ed.), pp. 436, 437, 441–443; *Joseph* v. *Herzig* (198 N. Y. 456, 462); *Hull* v. *Cartledge* (18 App. Div. 54, 59); *King* v. *Leighton* (100 N. Y. 386, 392); *Matter of Silkman* (121 App. Div. 202, 209; affd., 190 N. Y. 560); *Bauchle* v. *Smylie* (104 App. Div. 513).

We think, however, that the surrogate would have been justified in exercising his equitable jurisdiction by directing a liquidation and should have done so in order that the claimant might be permitted to prove the claim in part, at least, if possible. In the present state of the record, to allow the claim in part would be a mere guess, as stated by the surrogate. It does appear in the record, however, that Winter, by a balance sheet prepared in his own handwriting on February 17, 1927, two months before his death, indicated that the sum of $3,073.96 was due from him to the firm on February 1, 1927. In that statement the inventory of the merchandise is given as $11,655.56. In Miller's appraisal

of April 19, 1927, the value of the merchandise is given as $6,608.64. There is practically no difference between the parties as to accounts receivable, cash on hand, paid-up insurance, or value of furniture and fixtures and any difference in the amount of accounts payable and notes payable may be easily reconciled. It is entirely likely that claimant can, by taking Winter's inventory values of merchandise as a start, prove from the books of the firm the stock sales and purchases from February 1, 1927, to April 16, 1927, the date of his death, and figure the profit or loss to that date, when Miller took possession. If Winter's figures are accepted as to the value of the goods, as thus adjusted to the date of his death, his estate cannot be heard to complain. Miller must account for any profits thereafter gained in sales or in increase of inventory value. (*Case* v. *Abeel*, 1 Paige, 393; *Matter of Silkman*, 121 App. Div. 202; affd., 190 N. Y. 560.) It seems very doubtful if there can be any net gain or profit to be accounted for by Miller or Charles Sterns & Co. It is undisputed that much of the stock of goods was antiquated and obsolescent and would have to be sold at much less than cost. Claimant may be able to prove more specifically the overvaluation of such goods by Winter, who seems to have used cost figures for his inventory. This with the proof of inability to consummate a clearance sale at fifty per cent of sound inventoried valuation indicates that Winter inventoried at an inflated valuation. Even figuring the merchandise at its inflated cost value, Winter's statement indicates a net deficit chargeable against the two partners of about $6,000 as of February 1, 1927. The business was apparently failing when Winter died and the good will was probably worth little or nothing. It seems to us that a liquidation if directed would show an indebtedness of the estate of Winter to the estate of Sterns of not less than $3,000. A liquidation, resulting in only partial payment of the claim, may be all that claimant can secure equitably because of the involvement of the situation by reliance on Miller's own valuation of the goods, the commingling therewith of goods of Charles Sterns & Co. without separate record of prices brought at the clearance sale, and by a sale to claimant at a valuation fixed by Miller, one of claimant's own executors. There is, however, no dispute of the fact that Miller acted in good faith throughout the transaction and thought he was acting with the consent of the estate of Winter and for that reason the claimant is entitled to the best adjustment that the present predicament affords.

The decree should be reversed and the matter remitted to the Surrogate's Court to proceed in accordance with this opinion, with costs to abide the event, payable out of the estate, unless

within twenty days after service of the decision herein the parties shall stipulate that the claim be allowed at the sum of $3,000; in which event the surrogate is directed to so allow the claim, with costs in this court, payable out of the estate.

All concur.

Decree reversed on the facts and matter remitted to the Surrogate's Court to proceed in accordance with opinion, with costs to abide the event, payable out of the estate, unless within twenty days after service of the decision herein the parties shall stipulate that the claim be allowed at the sum of $3,000; in which event the surrogate is directed to so allow the claim, with costs in this court, payable out of the estate.