## C. J. ROCKWOOD v. FOSHAY TRUST & SAVINGS BANK.[1]

June 28, 1935.

No. 30,424.

*Junell, Driscoll, Fletcher, Dorsey & Barker,* for appellant.
*Morris B. Mitchell,* for respondent.

HOLT, JUSTICE.

Defendant appeals from an order sustaining a demurrer to the answer alleging certain set-offs or counterclaims, and directing judgment for plaintiff.

For brevity plaintiff will hereinafter be referred to as the company and the defendant as the bank. The company, a Delaware corporation, some time previous to November 1, 1929, owned 470 and a fraction of shares of the capital stock of the bank, 470 shares of

[1]Reported in 261 N. W. 697.

which it had pledged to one Warner to secure a loan of $500,000. The bank was organized under the laws of this state, having an authorized capital stock of $200,000, divided into 2,000 shares of the par value of $100 a share. On November 1, 1929, a general receiver was appointed for the company, by the federal court, who at once qualified. Coincident with such appointment the bank ceased to do active business and began liquidation, although the stockholders did not authorize the board of directors to dissolve the bank until in September, 1933. When the bank ceased active banking, another bank assumed and agreed to pay the bank's depositors and creditors and obtained the pledge of certain of the bank's assets as security. On December 21, 1933, the liquidation had progressed so far that a liquidating dividend of $30 upon each share of its capital stock was declared. It also appears that the receiver had brought suit against Warner to cancel the $500,000 debt as usurious and to recover the 470 shares of stock of the bank pledged to secure the debt; that the receiver recovered the stock, demanded of the bank the liquidating dividend thereon, was refused, and thereupon, by order of the court, was permitted to bring this action. The pleadings show that claims to the amount of more than $1,600,000 had been filed against the company, including two claims of the bank aggregating $846.20, and that the assets will pay only a small fraction thereof. The answer practically admits the allegations of the complaint; but sets forth six "defenses, counterclaims and set-offs," aggregating some $40,000 due the bank from the company on November 1, 1929, and asks that the $14,122.17 liquidating dividend upon the 470 and a fraction shares held by the receiver be applied or offset upon the $40,000 debt due the bank from the company. As we view the legal question presented by the demurrer, it will not be necessary further to detail the averments of the pleadings.

Counsel for the bank concede that if the bank had continued in an active business for some space of time after the appointment of the receiver for the company the right of set-off would not exist. But the contention is that the bank did in fact go into liquidation coincident with the appointment of the receiver for the company. This, however, is not so. The bank was not taken over by the com-

missioner of banks. It was not in the custody of the law. The statute provides how state banks may voluntarily go into liquidation. 2 Mason Minn. St. 1927, § 7694. Not until September, 1933, did the stockholders of the bank authorize its dissolution. At any time before that date, with the approval of the commissioner of banks, it might have resumed active business. The liquidating dividend indicates that the bank was not insolvent on November 1, 1929. When the company went into the hands of a receiver mutual debts then existing could be set off. But at that time the shares of stock in the bank held by the company were not a debt against the bank, nor was the stock pledged to secure any debt from the company to the bank. Until the liquidating dividend was declared there was no right of action in the company or its receiver to sue the bank on account of any rights growing out of being a stockholder therein. Brown v. Deposit Nat. Bank, 234 App. Div. 524, 256 N. Y. S. 82, appears to be in point that there is here no right of set-off. Another case is Matter of Peoples Surety Co. 186 App. Div. 663, 175 N. Y. S. 74 (affirmed 226 N. Y. 697, 123 N. E. 884) where the distinction between prior New York decisions and that case are pointed out, particularly Matter of Hatch, 155 N. Y. 401, 50 N. E. 49, 40 L. R. A. 664, and Bridges v. National Bank of Troy, 185 N. Y. 146, 77 N. E. 1005, 7 Ann. Cas. 285, followed. There the liquidating dividend was declared on the capital stock of the Peoples Surety Company, which was indebted to the Union Bank in a large sum at the time that bank was taken over by the superintendent of banks. The Union Bank owned 55 shares of the capital stock of the surety company, when so taken over. The assets of the bank were insufficient to pay the claims allowed against it. Subsequently the surety company was dissolved and a receiver appointed, who was directed by the court to pay a liquidating dividend of $50 a share. A set-off of this dividend against the debt due the surety company from the bank, when it was taken over by the superintendent of banks, was denied, the court saying [186 App. Div. 667]:

"The superintendent in charge was a liquidator authorized to collect claims in the name of the bank. At the time the superin-

tendent took charge no right of action upon the capital stock of the surety company existed; therefore, when that right of action subsequently arose, the previous indebtedness of the bank was not a set-off. The test is, was this surety company stock at the time it was appropriated to the payment of the debts of the Union Bank subject to any set-off? These shares of stock were subject to no set-off. They constituted no claim against the Peoples Surety Company. The shares the bank held it could have sold immediately prior to their going into possession of the superintendent of banks and given good title thereto. Immediately after taking possession, the superintendent of banks could have done the same thing. The creditors were, therefore, entitled to have this property applied to the payment of their debts, undiminished by any set-off not existing at that time."

So here, the creditors of the company were entitled to have these 470 and a fraction shares of stock in the bank applied to the payment of their debts undiminished by any set-off of the bank not existing when such creditors' rights attached, *viz.*, November 1, 1929, upon the appointment of the receiver. If set-offs are allowed it would virtually result in giving a preference to the bank over other creditors of the company.

Counsel for the bank contend that equitably a set-off should be allowed, stating the proposition thus:

"If the Bank ceases transacting business and goes into liquidation before, or coincident with, the appointment of an equity receiver for the Company and as a result of the liquidation of the Bank, it later declares a liquidating dividend on its stock, such liquidating dividend on the stock of the Bank owned by the Company may be offset against the indebtedness of the Company to the Bank owing at the time the liquidation began."

The bank did not see fit to file the now asserted counterclaims or set-offs against the company in the receivership proceeding. It filed only two small claims aggregating $846.20 therein. The receiver went into expensive litigation which resulted in recovering these 470 shares of stock pledged to secure a usurious loan to the

company, and the bank now seeks to obtain the fruits of the litigation by offsetting the debt of the company to it against this declared dividend, and the creditors of the company say it would not be equitable to diminish their interest in the assets of the estate of the receiver by the debt due the bank from the company. The bank cites and relies on these three cases. McClelland v. Merchants & M. Nat. Bank, 77 Colo. 302, 236 P. 774; Marcus Shipping Assn. v. Barnes, 169 Iowa, 377, 151 N. W. 525, 527; Merrill v. Cape Ann Granite Co. 161 Mass. 212, 36 N. E. 797, 23 L. R. A. 313. In the Colorado case a national bank was involved, and it had gone into voluntary liquidation as permitted by the federal law. After liquidation had proceeded so far that the bank had discharged all its debts, a stockholder, McClelland, against whom the bank had obtained a judgment upon a debt, became insolvent, and a receiver was appointed for him. In the meantime a receiver was appointed for the bank, and in the receivership proceeding the court permitted the dividends upon the stock owned by McClelland in the bank to be applied on the judgment against him. In the Iowa case a corporation whose statutory life had expired had liquidated its affairs and had a fund left for distribution to its stockholders amounting to $40 a share. Barnes had served as its treasurer and was indebted to it for moneys not accounted for in the amount of $2,000, when he was adjudged an involuntary bankrupt. The corporation was held entitled to set off the amount due on Barnes' shares of stock upon his indebtedness to the corporation. It is undeniable that the reasoning of this case is rather persuasive in favor of a set-off for the bank here. The court, after stating that the capital stock of a corporation is a liability in favor of its stockholders which is not enforceable in law or equity until the dissolution of the corporation and distribution of its assets, says that when the legal period for its existence has expired and the work of liquidation has begun the corporation and its stockholders assume a somewhat changed relation to each other. Then the court concludes that under the circumstances stated it would be gross injustice not to allow a set-off and, continuing, says [169 Iowa, 382]:

"But irrespective of the technical question whether mutual indebtedness in the ordinary sense of that word existed between the corporation and Barnes when the trustee in bankruptcy succeeded to the title to his estate, we think it sufficient to say that the trustee took the certificates of stock subject to the equities then existing between the bankrupt and the corporation. At that time the sole right in Barnes as a stockholder was the equitable right to receive his proportionate part of the assets of the corporation on final distribution less any proper charge or set-off against it. It was this right which the trustee acquired and no injustice is done him or the creditors he represents by denying him more."

The Massachusetts case presents facts so different from those appearing in the case at bar that no persuasive reason is to be found therein for either allowing or denying a set-off here.

The bank also asserts an equitable lien on the liquidating dividends for the amount of its counterclaims under the provisions of 2 Mason Minn. St. 1927, § 7463, which provides:

"Stock shall not be transferred upon the books of the corporation while any instalment thereon remains delinquent, nor while any indebtedness of the recordholder thereof to the corporation remains unpaid."

We think it has been definitely determined in this state that this statute does not apply, but instead the subsequent statute, § 7676, reading:

"It shall make no loan or discount on the security of its own capital stock, nor be the purchaser or holder thereof, unless necessary to prevent loss upon a debt previously contracted in good faith, and all stock so acquired shall be disposed of at public or private sale within six months after it is so acquired." Anderson v. Cook County State Bank, 154 Minn. 231, 191 N. W. 417.

It is difficult to see the propriety of the courts giving an equitable lien when a statute indicates a state policy prohibiting a bank from acquiring a lien upon its capital stock, except on conditions not here present. In Sigel v. Security State Bank, 134 Minn. 272, 275, 159 N. W. 567, 568, it was said of § 7676:

"The purpose of the statute is too obvious to require discussion. It was enacted in the interest of sound and safe banking and to prevent stockholders from impairing the capital of the bank by withdrawing the funds thereof without adequate security."

The well-known industry of counsel has found no case holding under statutes like ours (§§ 7463 and 7676) that an equitable lien is retained by a liquidating bank on the liquidating dividend of a stockholder which may be set off against an indebtedness of the stockholder to the bank existing at the time liquidation began. Matter of Starbuck, 251 N. Y. 439, 167 N. E. 580, 65 A. L. R. 216, referred to by counsel, is not a guide for us because the section of the New York code corresponding to our § 7463 is there held to apply to banks.

The order is affirmed.