(18 App. Div. 54.)

## HULL et al. v. CARTLEDGE et al.

(Supreme Court, Appellate Division, Second Department.   May 11, 1897.)

**1. PARTNERSHIP—CONSTRUCTION OF ARTICLES—PURCHASE BY SURVIVOR.**

. Partnership articles provided that on the death of one partner the survivor might purchase decedent's interest, and pay therefor by giving his individual obligation, without further security, payable "in equal half-yearly installments of not less than $20,000," with interest. The partners had been connected in business for more than 40 years, and had been partners about 30 years. The articles of partnership had been renewed several times. The capital of the firm had increased each year until at the time of the last renewal the amount was such that the provision for purchase by the survivor was such that the deferred payments would extend through 10 years. The business was so extensive that it could not be quickly wound up without great loss. *Held*, that the long time for payment by the survivor, with only his personal liability, though unusual, was within the contemplation of the partners.

**2. SAME—MODE OF EFFECTING PURCHASE.**

Such articles authorized the surviving partner by his own act to transfer the partnership property to himself, which was effected merely by notifying the executors of the deceased partner of his election to purchase, and delivering to them his bond for the amount determined as provided in the articles.

**3. EXECUTORS—POWERS BEFORE PROBATE OF WILL.**

Where partnership articles provide that the surviving partner may purchase the deceased partner's interest within three months after his death by executing and delivering to decedent's personal representatives a bond of specified purport, the persons named in the deceased partner's will as executors have power before probate to accept such bond.

Appeal from special term, Kings county.

Action by Robert B. Hull and others, as executors of the will of Joseph Wild, deceased, against John Cartledge and others. The complaint was dismissed on the merits, and plaintiffs appeal. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

James C. Foley, for appellants.
Henry G. Atwater, for respondents.

BRADLEY, J.   The question presented relates to the construction and effect of certain provisions of articles of partnership in their relation to the surviving partner, so far as they express the purpose to enable him to take title to the partnership property. The firm of Wild & Co. was composed of Joseph Wild and John Cartledge. In their articles of co-partnership, of date September 30, 1881, and thereafter from time to time renewed, was the provision that "the surviving partner shall be at liberty to purchase and take all the partnership assets, property, and business, upon payment to the legal representatives of such deceased partner of the just and full amount of his share thereof or interest therein, as fixed and determined" by other provisions of the articles.   "The surviving partner must, however, within three months after the death of the partner so dying, elect to purchase and take such partnership assets, property, and business as aforesaid, and in case of his failure to elect, then the partnership affairs are to be wound up and settled in the

usual manner, except that in any event the legal representatives of the deceased partner are to have and receive for his share the amount as fixed and determined, in the manner" therein agreed upon. And it was provided that, in the event the surviving partner should elect to purchase the share of the deceased partner, he should pay therefor by executing and delivering to the legal representatives of the latter his individual obligation, in the form of bonds or commercial paper, without further security, "for the payment of the purchase price, in equal half-yearly installments of not less than twenty thousand dollars, with interest at six per cent., payable semiannually, on all deferred payments," and should have the privilege of paying in larger and more frequent installments. These are mainly the provisions to which the controversy relates.

The partner Wild died September 3, 1896, leaving his will, by which he nominated the plaintiffs as executors. The will was admitted to probate, and letters testamentary were issued to them the 27th day of October following. On September 14, 1896, the surviving partner ascertained, in the manner provided by the articles of co-partnership, that as of that date the interest of the estate of the deceased partner in the property and assets of the firm was $448,-281.52. He then elected to purchase that interest, and so notified the persons nominated as executors by the will of the deceased partner, and to whom letters testamentary were afterwards issued, and handed to them a draft, unexecuted, of the bond he proposed to make and deliver to them, with a computed statement of the interest of the deceased partner, amounting to $448,281.52. This draft of bond was submitted to them for their approval, and in support of such amount he exhibited to them the balance sheet of January 1, 1896, signed by both partners. He also informed them that he proposed to form a new firm to carry on the business. Thereafter, and on the same day, Mr. Cartledge did form a new firm, composed of himself and the other defendants, Beresford, MacKay, and Charles F. Cartledge, and transferred the property and assets of the old firm to the new one thus formed. The next day the papers were returned by those persons so nominated as executors to Mr. Cartledge, with a letter from their counsel to the effect that until the will was admitted to probate they had no authority to receive the paper, that he could not by delivering it to them effect a transfer of the property to himself, that they did not recognize that any such transfer had taken place, and that they did not and should not consent to the transfer of the property to a new firm to be formed by him. Nothing further occurred requiring attention until November 2, 1896, when Mr. Cartledge executed a bond, of date September 14, 1896, conditioned for the payment of $448,281.52 in semiannual installments of $20,000 each, or in larger sums, with interest at the rate of 6 per cent. per annum on amount unpaid, and tendered it to the plaintiffs. They rejected the bond for the reason, as expressed in the letter of their counsel, that he (Cartledge) had transferred the partnership property to the new firm when it should have remained in his hands as security for the performance of his obligations, and that the bond was insufficient in amount, in that it

included profits of the business to September 14th only, when they should have been included to November 2, 1896.

It is contended on the part of the plaintiffs that it was not within the contemplation of the parties to the articles of co-partnership that the estate of the deceased partner should, on the election of the survivor to purchase, have only his personal liability, but that the reasonable and just interpretation of their contract is such that the representatives of the deceased partner should have a continuing lien upon the assets of the firm until the consideration of the purchase should be paid, and therefore the sale to the new firm must be treated as ineffectual, and be adjudged unlawful, or be charged in its legal consequences as a movement to wind up the business of the late firm, to be followed by the accounting of the surviving partner. Ordinarily it might be somewhat remarkable for members of a firm to enter into an agreement to the effect that the survivor could, at his election, take the share of the deceased partner for a price secured merely by his personal obligation to pay in installments extending through the period of 10 years. It may be that when such provision was first inserted in the articles it was not contemplated that, in the event of death of one of the members of the firm, his capital or interest subject to purchase would be so large in amount as it was when the opportunity to make such election occurred. In round figures the capital of the firm at the close of the year 1881 was $258,000, of which that of Wild was $107,000 and that of Cartledge $150,000; three years later the capital of the firm was $435,000, of which that of Wild was $203,000 and that of Cartledge $232,000; on January 1, 1888, it was $635,000, of which that of the members of the firm, in same order, was $288,000 and $346,-000; on January 1, 1891, the capital of the firm was $870,000, of which Wild was credited with $396,000 and Cartledge with $474,-000; and on January 1, 1896, the capital had increased to $1,-039,000, that of Wild to $470,000, and that of Cartledge to $569,000. The fact of such increase has some significance, bearing upon the purpose and understanding of the parties as they made up and subscribed a statement of the situation as of the 1st of January in each year, and at the expiration of three years from January 1, 1882, and every two or three years thereafter, the articles of co-partnership were renewed, without any change of provisions, to and including January 1, 1894, when they were in like manner renewed for the further term of three years. The partners were, therefore, well advised of the amount of the capital of the firm, and the extent of their interests, respectively, when they entered into the several agreements for extension of the partnership, and for the continuance of the provisions in question. They had been associated in business so long that it may be assumed that they had and continued to have well-founded reasons for high appreciation of the character and qualities, business and otherwise, of each other. They became connected in business in the year 1852, from which time Mr. Cartledge continued in the relation of clerk to Mr. Wild until 1867, when he became a partner of the firm, which continued until the death of the plaintiffs' testator. This long-continued, harmonious,

and successful business relation of these men would seem sufficient to warrant the confidence manifested by the provision which should permit the survivor to become the sole owner of the partnership property and business upon his individual responsibility for the payment of the price to be paid for the interest left in the firm by the deceased member.    Then there were other considerations, which may have had some, and perhaps much, inducing influence upon the action of the parties in providing for such right of election, arising from the nature and extent of the business of the firm, which might render the sudden winding it up difficult without sacrifice.    The business was large, consisting of manufacturing of articles connected with the carpet business,—cocoa goods, sheepskin rugs, mats, table and oil cloths, and linoleum,—in which they operated six factories and employed a large number of men.    The firm was also engaged in the importing business from the Eastern countries, and made sales largely on credit.    These facts are referred to as showing some reason for the exceptional nature of the provision in the articles, resulting, also, from the reciprocal desire that the business might not be seriously interrupted by the death of one of the members if the survivor elected to continue it.    Each having in the other confidence in his integrity, business qualities, and ability, as well as his purpose to faithfully perform his obligation to pay the price if he elected to take the property, there is no occasion to apprehend that the provision to that effect was not deliberately made by the members of the firm, and well understood by them in its purpose and effect, as expressed by the language employed.

The further inquiry has relation to its consequences.    It is necessarily conceded that, without the aid of any provision to that effect, the legal title to the entire partnership property by law vests in the survivor, on the death of his co-partner, subject, only, to such equitable rights as might exist or arise under circumstances permitting their exercise for the protection of the partnership estate and for its due administration.    He has ample power to sell the property.    Williams v. Whedon, 109 N. Y. 333, 16 N. E. 365. He cannot, however, represent both sides of the contract, and sell to himself, without the aid of some adequate agreement to that effect between him and his partner, existing and in force at the time of the death of the latter.    Such is the situation in the present case.    The partners not only provided for such sale by the survivor to himself, but in practical effect agreed upon the terms, including the price and manner in which the liability of the survivor to pay should be represented.    It may be that the amount of the semiannual installments was fixed in reference to what it was deemed could be paid from the proceeds of the business without crippling it, and that the increase of capital may have permitted the enlargement in amount of the installments without embarrassment.    But in view of the repeated renewals of the articles, and the continuance of such provision, without change, notwithstanding the increase in amount of the capital, there is no reasonable opportunity to assume that a condition which would extend the period within which the survivor would be required to pay over a greatly-

increased number of years was not within the contemplation of the partners and not within their intentions. When the renewal of 1891 was made they were advised that the payment for the smaller share in the stipulated installments would cover the period of about 10 years. While it evidently was contemplated that the election of the survivor to purchase the other share in the property would be followed by the continuance of the business, there is nothing to that effect expressed in the articles, nor is there any restrictive provision in relation to the use which the survivor in such case may make of the property. It was not consistent with the purpose, as expressed in the articles, that the representatives of the deceased partner should have a lien on the property as security for the payment of the purchase money, nor can it be seen that such was the intent of the partners. It may be, however, that if the surviving partner, after electing to purchase, had sought to immediately follow his election by an out and out sale of the entire property and business, and thus disconnect himself from it, a different question would be presented from that which arises here. The organization of a new firm by him, of which he, having the controlling interest, is the head, and handing the property over to it, violate no intent of the partners as found in their agreement, nor any rights of the personal representatives of the deceased partner. Assuming, therefore, that the survivor duly exercised his right of election, and thus acquired title by purchase of the interest left by his deceased partner in the firm property, there is no occasion to consider the question of equitable lien applicable to the situation generally between the personal representatives of a deceased partner and the survivor, urged upon our attention by the learned counsel for the plaintiffs. On the death of Mr. Wild the surviving partner became charged with the duty to wind up the affairs of the dissolved firm, subject, however, to his right to elect to purchase and take the share of the decedent within three months after the death.

It is insisted on the part of the plaintiffs that the sale was made by the survivor to the new firm before he acquired title other than that of survivor and by virtue of the legal effect of that relation, and therefore the sale must be deemed as made in the process of winding up the affairs of the old firm. It is true that the agreement of the partners providing for the election and purchase by the survivor of the other's interest in the partnership property and assets was executory, and title could not be taken by the election pursuant to such provision without performance or its equivalent in readiness and offer to perform. Ex parte Wood, In re Wright, 10 Ch. Div. 554, 27 Moak, 106. In the event of such election and offer of payment, duly and in due time made as provided, the interest of the deceased partner in the firm then ended. Harbster's Appeal, 125 Pa. St. 1, 17 Atl. 204. But it is said that, inasmuch as the will had not been admitted to probate on the 14th day of September, the election of the survivor to purchase, and his offer to execute and deliver his obligation to secure the payment of the purchase price then made, were ineffectual. He was required by

the terms of the agreement to exercise his election within three months after the death of his partner. If his right to do so was dependent upon the previous probate of the will and the issue of letters to the executors, the embarrassment urged on the part of the defendants might arise from the late probate of the will to the effectual exercise of such election, the effect of which, in the view taken, it is unnecessary to consider. Executors derive their powers from the will, and at common law they not only had the power to take possession of the property of the testator before the probate of the will, but could commence an action as such. Valentine v. Jackson, 9 Wend. 302, 303; Thomas v. Cameron, 16 Wend. 579; Thomas v. Insurance Co., 50 N. Y. Super. Ct. 225. This was modified by the statute so as to restrict the exercise of power of executors, before the receipt of letters testamentary, to the payment of funeral expenses and to that necessary for the preservation of the estate. 2 Rev. St. p. 71, § 16; Code Civ. Proc. (as amended in 1893) § 2613. The acceptance of the security, which the survivor had the right to make, pursuant to the agreement between him and the deceased partner, would seem to come within the power of the executors nominated in the will before its probate and letters issued thereon to them, as the taking of it would be for the preservation of that portion of the estate of the decedent. People v. Commissioners of Taxes, 31 Hun, 235; Hartnett v. Wandell, 60 N. Y. 350; People v. Barker, 150 N. Y. 52, 44 N. E. 785. There was nothing for them to do to consummate the purchase by the survivor. That was, pursuant to the agreement, to result from his election, followed by his obligation to the personal representatives of the deceased partner. Assuming that the survivor proceeded under the provisions of the contract permitting him to acquire by purchase the property and business, it is insisted on the part of the plaintiffs that they were entitled to share in the profits of the business up to November 2, 1896, when the executed obligation was tendered to them. Up to the time that the election of the surviving partner to purchase became effectual, they were entitled to share in the profits of the business. This is not only substantially provided for by the contract, but it is in accordance with the law upon the subject. Wilson v. Simpson, 89 N. Y. 619; King v. Leighton, 100 N. Y. 386, 3 N. E. 594; Skidmore v. Collier, 8 Hun, 50, 54.

As has been observed, the survivor of the firm on September 14th advised the defendants of his election to purchase and his readiness to deliver his obligation. He was ready and willing to do it. They declined to accept it or to consider the matter until after probate of the will, and thereafter, and on November 2d, they also declined to accept it. The instrument he then tendered was dated September 14th, and in its amount was included the profits of the business up to that day, and bore interest therefrom. Under the circumstances as they occurred, his election, then made and announced, resulted in the transfer to him, that day, of the entire interest of his deceased partner in the partnership property and business. The plaintiffs, as the personal representatives of the deceased partner, cannot be permitted to take any advantage or benefit from

their refusal to accept the obligation of Cartledge on September 14th, inasmuch as that which was tendered to them on November 2d was of the same, in date and terms, as that which they declined to take on the former occasion. .They were not, then, so powerless that they could not have properly made the requisite examination to see that the consideration which the surviving partner proposed to pay was correctly represented. This they had permission to do. There is no controversy in that respect, except as to the question just now considered in relation to the profits of the business between September 14 and November 2, 1896. The bond complies in terms with the requirement of the provision of the contract pursuant to which it was made.

It is suggested on the part of the plaintiffs that Mr. Cartledge should, by an instrument to that effect, indemnify them from the charge of liability for any debts of the old firm. The contract between the partners contains no express provision to that effect. But the surviving partner concedes that the understanding was that he was to assume the debts of the old firm. Without any arrangement to that effect, he, as survivor, would be primarily liable for their payment. But, to relieve the plaintiffs from any ultimate liability or charge for any debts of the old firm, it may be desirable that they have some instrument of indemnity from him, which he probably will not hesitate to give them. With a suitable modification for such direction the judgment should be affirmed, with costs.

Judgment modified, so as to make the dismissal of the complaint conditional upon the execution of a covenant by John Cartledge, under his hand and seal, indemnifying the appellants and the estate represented by them from all liability on the account of any debts or obligations of the late firm of Wild & Co., and said judgment, so modified, is affirmed, with costs; ordered to be settled before Judge BRADLEY on five days' notice. All concur.