In the Matter of the Compulsory Judicial Settlement of the Estate of WHITNEY B. WINTER, Deceased.

Surrogate's Court, Clinton County, March 14, 1930.

*Patrick J. Tierney*, for the claimant.

*Horatio W. Thomas*, for the executrix.

HARRINGTON, S. Whitney B. Winter died testate at Keeseville, Clinton county, N. Y., on April 16, 1927. His will was duly admitted to probate by this court on April 20, 1927, and letters testamentary were duly issued to his daughter, Mary E. Safford. The claimant herein instituted this proceeding for the compulsory judicial settlement of decedent's estate. On the return day of the citation, September 10, 1928, the executrix duly filed her account.

Claimant duly presented to the executrix a claim in the sum of $6,220.99, which she claimed to be due the estate of Charles Stearns, late of Rutland, Vt., as the sole surviving partner of the firm of Stearns & Winter, of Keeseville, N. Y., after said partnership business had been sold upon the death of Mr. Winter. The claim was duly rejected.

It appears that Charles Stearns of Rutland, Vt., and Whitney B. Winter, of Keeseville, N. Y., became partners, for the conduct of a clothing business at Keeseville, N. Y., pursuant to a partnership agreement dated September 25, 1899. Mr. Stearns died on October 30, 1911. His widow and his son-in-law, Isaac Miller, were his executors. In February, 1912, by written agreement, the partnership of Stearns & Winter was continued by the estate of Charles Stearns by his executors, pursuant to authority given them in Mr. Stearn's will. Thereafter Mr. Miller represented the Charles Stearns estate in all matters concerning the partnership of Stearns & Winter. This partnership continued until the death of Mr. Winter. Mr. Winter was in active charge of the business. Mr. Miller visited this business only two or three times a year but kept in touch with it through monthly statements sent to him by Mr. Winter. During this time, Mr. Miller was in active charge of the clothing business of Charles Stearns & Co. at Rutland, Vt. This business was a partnership consisting of the estate of Charles Stearns and Mr. Miller.

Three days after Mr. Winter's death, and on April 19, 1927, Mr. Miller took a detailed inventory of the business of Stearns & Winter. He alone fixed the prices of all merchandise in this

inventory. No allowance was made for the good will of the firm of Stearns & Winter. The accounts receivable were classed as collectible and uncollectible, upon the judgment of employees who claimed to know such debtors. Mr. Miller testified that the prices which he placed on this merchandise were, in his opinion, the then present market value of such merchandise. From April nineteenth to May fifth the store of Stearns & Winter was closed to allow Mr. Miller to prepare for a clearance sale. From May fifth to May thirtieth a clearance sale was conducted. During the time of this sale a quantity of goods was shipped to this store from the store of Charles Stearns & Co. at Rutland, Vt., for the purpose of having a greater variety of goods and making the sale more attractive. No record was kept of this clearance sale to show whether the merchandise of Stearns & Winter was sold for more than the price at which it was appraised by Mr. Miller.

On or about June fourth Mr. Miller sold the business of Stearns & Winter to Charles Stearns & Co. on the basis of the book value thereof as of April 19, 1927, the date when Mr. Miller made an appraisal of said business. The business was conducted by Charles Stearns & Co. until November, 1928, when it was closed out. The claim presented herewith represents one-half of the debit balance of the firm of Stearns & Winter, based upon the appraisal of Mr. Miller on April 19, 1927, as above mentioned.

Shortly after the death of Mr. Winter, Mr. Miller conferred with Mr. Thomas, the attorney for the executrix of Mr. Winter's estate, with reference to what should be done to dispose of the business of Stearns & Winter. Mr. Miller testified that Mr. Thomas advised him that as he represented the surviving partner, the estate of Charles Stearns, he had full charge of all matters necessary to close out the partnership business. A short time later, Mr. Miller also saw Mr. Thomas with reference to a proposed sale of the business to Arthur Stearns, a son of Charles Stearns. In fact, it appears that Mr. Miller sold the business to Arthur Stearns for a price representing fifty per cent of the inventory value of the business, said inventory to be taken by Mr. Miller and Mr. Stearns. Arthur Stearns took over the business on May 23, 1927, and conducted it for three days and then refused to carry out his contract but accounted to Mr. Miller for all matters occurring while the business was so conducted by him. Mr. Miller admitted that he did not advertise the business for sale. He spoke to an insurance agent in Keeseville, N. Y., relative to a proposed purchase but discussed the matter with no other persons. Mr. Miller did not consult either Mr. Thomas or the executrix of Mr. Winter's estate relative to the sale of the business to Charles Stearns & Co.

At the close of the claimant's case, the attorney for the executrix of Mr. Winter's estate moved to dismiss the claim on the ground that such a claim could not be presented against the estate of a deceased partner until the partnership business had been duly liquidated; that the sale of the partnership business to Charles Stearns & Co., a partnership in which Mr. Miller was and is a member, does not constitute a proper liquidation of the business of Stearns & Winter.

There can be no question as to the authority of this court to pass upon claims of this nature. (Surr. Ct. Act, §§ 40, 211; *Matter of Raymond* v. *Davis*, 248 N. Y. 67.) In fact, the case above cited states that a surrogate may, as an incident to the allowance or rejection of a claim of this nature, order by a decree the liquidation of a partnership business. Here, however, such a decree would be useless for there remains nothing of a substantial nature of the business of Stearns & Winter to liquidate. The important question in this case is the legal effect of the liquidation, which has already occurred.

The duties of a surviving partner relative to the liquidation of a partnership business are well established. Among other things, the surviving partner is forbidden to take over the partnership at his own valuation. His duties in this respect have been defined as follows: " The surviving partners are held strictly as trustees; and their conduct, in discharging their trust, is carefully looked after by courts of equity. Thus, like other trustees, they cannot sell the property of the firm and buy it themselves; nor, as the converse of this, can they buy from themselves property for the firm. Their trust being to wind up the concern, their powers are commensurate with the trust. Hence, they may collect, compromise, or otherwise arrange all the debts of the firm; and their receipts, payments, and doings generally, in this behalf, are valid, if honest, and within the fair scope and purpose of the trust. And if there be negligence, delay, misconduct, or gross mistake, equity will interfere, and give the proper relief." (Parsons Partn. [4th ed.] 436, 437.)

" It has sometimes been supposed that the surviving partners have a right to take all the effects and merchandise (after the debts are paid or secured) at a valuation. And, undoubtedly, there may be cases in which this would be a just and beneficial mode of settlement, and the court would therefore permit or order it. But it must be clear that they have no such right. Indeed, the right on this point is on the other side; for it would seem, both from the reason of the case and on the authorities, that the representatives of the deceased have a right to require a sale of the effects, as the

only certain way of ascertaining their value and making a fair division. But this again, although a rule, cannot be deemed a universal rule; for equity may find in particular circumstances good reason for not decreeing a sale, although it must be admitted that it strongly inclines to that mode of settlement, as, on the whole, the fairest and the safest. That the representatives of the deceased may have an account taken — or, rather, that their right in this respect is as complete as the right of the deceased while he lived and was a partner — seems to be certain." (Parsons Partn. [4th ed.] 441, 443.)

"A surviving partner has no right, in the absence of some provision in the partnership articles, to appropriate the firm assets for his own use, although he is willing to pay the value thereof. As to the estate of the deceased partner he is a trustee, bound to liquidate the partnership and dispose of its assets like other trustees." (*Joseph* v. *Herzig*, 198 N. Y. 456, 462.)

" He cannot, however, represent both sides of the contract and sell to himself without the aid of some adequate agreement to that effect between him and his partner, existing and in force at the time of the death of the latter." (*Hull* v. *Cartledge*, 18 App. Div. 54, 59.)

" As a general rule surviving or solvent partners cannot take the assets of the firm at a valuation as of the time of the dissolution. They have a right to the possession and control of the assets, but it is for the purpose only of satisfying the liabilities of the firm and turning the effects into money in the manner most advantageous to the interests of all concerned." (*King* v. *Leighton*, 100 N. Y. 386, 392.)

" It is clear that the surviving partner has no right to take the assets at a valuation." (*Matter of Silkman*, 121 App. Div. 202, 209; affd., without opinion, 190 N. Y. 560.)

When a sale of the partnership business is made to a surviving partner, the burden of proof is upon the surviving partner to show by satisfactory evidence that the sale was in all respects fair and that the estate of the deceased partner received its just share of the actual value of the partnership business. (*Bauchle* v. *Smylie*, 104 App. Div. 513.)

In *Didlake* v. *Roden Grocery Company* (160 Ala. 484; 22 L. R. A. 907) the surviving partners formed a corporation and with others took over the partnership business. The stock of goods was inventoried at cost and carriage and taken at that value by the corporation. The widow and administratrix of the deceased partner was requested to have someone present at the taking of the inventory and she did have her uncle so present. The court

states that while there is some conflict in the evidence, it believes the sale of the partnership business to the corporation was made with the approval and consent of the administratrix of the deceased partner. When all of the assets had been disposed of by the corporation, the administratrix then sought to set aside the sale to the corporation. The court refused to allow this, stating as follows: " She stood by until claims were all collected, the stock of goods sold and scattered beyond control, and all the proceeds distributed, she receiving her portion of the same, and she cannot at this late day, disaffirm the sale, retain what she had received, and involve not only the surviving partners, but the new stockholders in litigation. There is no evidence of fraud or overreaching. The agreement seems to have been fair and just, and in fact, the only complaint raised against it is, as before stated, that the good will should be accounted for."

Counsel cites the above case as authority for the proposition that a surviving partner may in some cases be allowed to take over a partnership business at a valuation. But in that case the representative of the deceased partner, at the request of the surviving partners, had her agent present at the appraisal of the partnership assets by the surviving partners. This essential fact is not present in the case in question.

I believe the facts of the case before this court and the law applicable to the same are such that this claimant cannot recover. The evidence fails to indicate any determined effort on the part of Mr. Miller, acting as one of the executors of the estate of Charles Stearns, the surviving partner of Stearns & Winter, to dispose of this business. He discussed the matter with only two people and one of these was the son of the said Charles Stearns. The business was never advertised for sale. While he did discuss the proposed sale to Arthur Stearns with the attorney for the estate of Mr. Winter, he never discussed with any representative of the estate of Mr. Winter the actual sale to Charles Stearns & Co., which, as heretofore stated, is a partnership consisting of the estate of Charles Stearns and Mr. Miller. There is nothing before the court to indicate whether the clearance sale of this partnership business, from May 5, 1927 to June 4, 1927, resulted in securing prices for the merchandise of the partnership greater than those as inventoried by Mr. Miller on April nineteenth. Mr. Miller offers no good reason for not associating with him, at the time of taking the inventory, someone of experience in such business who could check the values which he placed on the merchandise. The statement of the partnership business as of April 19, 1927, prepared by a public accountant and offered in evidence, is of no assistance in

determining whether the values placed on the merchandise by Mr. Miller were correct. The accountant testified that he used the same figures for the value of the merchandise as were placed thereon by Mr. Miller. This is exactly what occurred in *Matter of Silkman* (*supra*). Mr. Miller made no allowance for the good will of the business. The annual statements of the business from 1913 to 1926, inclusive, are in evidence. Using the statements for the last six years of the business, and determining the good will of the business in accordance with the rules established for the same, it would appear that such good will was worth at least $350. If the annual statements of the business for the last ten years were used, the value of the good will would be somewhat larger. But the omission by Mr. Miller in making no allowance for the good will of the business is of little importance as compared to his method of appraising the merchandise of the business.

It is not necessary to imply that Mr. Miller had any ulterior motive in his method of disposing of the stock of goods. But the fact is that by such procedure he has so disposed of the partnership business as to prevent this court from directing a liquidation of the same pursuant to law. All of the testimony and all of the exhibits do not change the real essential fact in this case, namely, that this court is asked to approve a claim against Mr. Winter's estate for a sum representing the difference between the actual and known liabilities of the partnership, less the assets of the partnership, which are of unknown value, except for the appraisal of Mr. Miller alone acting for the surviving partner of Stearns & Winter, and for the purpose of making a sale to Charles Stearns & Co., a partnership consisting of Mr. Miller and the estate of Charles Stearns. There is nothing in the evidence to justify this court in allowing in part the claim as presented. Nor can this court allow claimant the sum of $3,073.76, which sum Mr. Winter, by a statement prepared in his own handwriting on February 17, 1927, indicated was due by him to Stearns & Winter on that date. The business was conducted by Mr. Winter from the date of this statement to a short time before his death on April 16, 1927. From the date of Mr. Winter's death to June fourth the business was conducted by Mr. Miller. There is nothing to indicate whether the business was conducted at a profit or loss from February 17, 1927, the date of said statement, to June 4, 1927, when the business was sold to Charles Stearns & Co. Also, in said statement the merchandise is given as $11,655.56, whereas in Mr. Miller's appraisal it is shown as $6,608.64. There is little difference between accounts receivable in Mr. Winter's statement and those listed as collectible in Mr. Miller's appraisal. While it may be urged that the busi-

ness was not operated during this period at a profit, this court has no evidence upon which to base a conclusion to this effect. This claim as presented must be allowed or rejected.

The rules of law, as above cited, forbidding a surviving partner to sell partnership assets to himself at a price fixed by himself are well established. To allow this claim would compel the approval of a sale which is clearly contra to the rules of law applicable to the duties of a surviving partner in liquidating a partnership. However much this court may feel, from the evidence, that if Mr. Miller had liquidated this business in accordance with the rules of procedure applicable to the same, the claimant might have had a just claim for contribution from the estate of Mr. Winter, the procedure actually used was such that to allow in part the claim as presented would be a mere guess on the part of this court as to what claimant might have been entitled to had the partnership been properly liquidated. This, of course, cannot be done.

Counsel for the claimant urges that the estate of Mr. Winter should at least be compelled to contribute its share toward the payment of a note given by Stearns & Winter to Charles Stearns as a capital loan, in the sum of $12,000, citing subdivision (g) of paragraph IV of section 71 of the Partnership Law. It is sufficient to say that if the partnership had been properly liquidated and the assets were not sufficient to meet the liabilities, then the estate of Mr. Winter would have been liable for a contribution for the payment of this note to the extent of one-half thereof. But no such right of contribution of the estate of a deceased partner exists until the surviving partner shows by proper proof that the partnership has been properly liquidated and that the assets are not sufficient to meet the liabilities. Claimant has failed to establish to the satisfaction of this court that the business of Stearns & Winter was properly liquidated.

The motion to dismiss this claim is granted, without costs to either party. Prepare decree accordingly.