————o————

MICHAEL HANNON, *et al.*, Plaintiffs in Error, *vs.* THE COUNTY OF ST. LOUIS, *et al.*, Defendants in Error.

| 62 | 313 |
|----|-----|
| 110 | 596 |
| 112 | 143 |

| 62 | 313 |
|----|-----|
| 113 | 626 |

| 62 | 313 |
|----|-----|
| 125 | 60 |

| 62 | 313 |
|----|-----|
| 136 | 664 |
| 70a | 63 |

1. *Counties—Liability for injuries while engaged in enterprises of a peculiar and local character—Measure of liability as compared with municipalities and individuals.*—The rule that counties, being political sub-divisions of the State, are not liable for the laches or misconduct of their servants, has no application to a neglect of those obligations incurred by counties when special duties are im-

posed on them.  Thus, where the county of St. Louis made a contract for lay-
ing water-pipe to the county Insane Asylum, the work being done under the
supervision of the county engineer, and, while a trench was being dug in the
grounds of the asylum, it caved in and killed one of the workmen, it was held
that the duty in which the county was engaged was not one imposed by gen-
eral law upon all counties, but a self-imposed one ; that *quoad hoc* the county
was a private corporation, engaged in a private enterprise (more especially as
the work was being done on its own property), and governed by the same
rules as to its liability.  In such case it is immaterial, whether the performance
of the work is voluntarily assumed in the first instance, or is a special duty
imposed by the legislature, and assented to by the county.  And municipal and
*quasi* corporations are subject to the same doctrine of liability.

### Error to St. Louis Circuit Court.

*Bakewell & Farish*, for Plaintiffs in Error.

The case at bar is one in which the county was acting in a
private capacity and was liable to the extent to which a pri-
vate corporation would be.  (Lloyd vs. Mayor of N. Y., 5 N.
Y., 369; Eastman vs. Meredith, 36 N. H., 292: Bayley vs.
Mayor of N. Y., 3 Hill, 539; Mears vs. Com. of Wilmington,
9 Ired., 73; Inhab. 4 Sch. Dis. Rumford vs. Wood, 13 Mass.,
198; Thayer vs. Boston, 19 Pick., 511; Akron vs. M. Coun-
ty, 18 Ohio, 229; Rhodes vs. Cleveland, 10 Ohio, 159; Cun-
liffe vs. Mayor of Albany, 2 Barb., 190; Larkin vs. Co. of
Saginaw, 11 Mich., 91; Kent Com., vol. 2, p. 375; United
States Bank vs. Planter's Bank, 9 Whart., 907; Conrad vs.
Village of Ithica, 16 N. Y., 172; Hickok vs. Plattsburg, 16
N. Y., 161.)

In this case it is to be borne in mind that the party in-
jured was working under the immediate direction and super-
intendence of a county officer.  (Dill. Mun. Corp., § 792, and
cases cited.)

*Thos. C. Reynolds, Co. Att'y*, for Defendants in Error, re-
lied on Reardon vs. St. Louis County, 36 Mo., 555; and re-
ferred to Dill Mun. Corp., 2 ed., 1873, p. 872.

SHERWOOD, Judge, delivered the opinion of the court.

The petition, in substance, alleges, that in September,
1872, the county of St. Louis entered into a written contract

with Henry Luken, whereby the latter agreed to lay a water-pipe from the main pipe, at the intersection of Lafayette and Grand avennes, along certain streets to the grounds of the County Insane Asylum, thence through those grounds to a connection with the cistern of the asylum, in order to supply the same with water ; that the work was to be done to the satisfaction of the county engineer; was to be superintended by him, and that such precautions should be taken in the progress of the work, and in shoring such trenches as might be dug, in order to prevent accidents to life and limb, as the engineer should direct; that the width of the trench for the reception of the pipe was to be two and a half feet, and to vary in depth with the grade of the street ; that the sides of the trench were to be shored with plank and timber ; that the county reserved to itself the superintending control over the work, and the right to discharge any workman the contractor might employ ; that in December, 1872, the contractor had, in pursuance of the work, and under the direction of the engineer, dug on the grounds of the County Insane Asylum, then owned by the county, a trench thirty feet in depth, and not exceeding two and a half feet at the bottom ; that by reason of this and of not being properly shored, the trench was dangerous, and known to be so by both the engineer and the contractor ; that the minor son of plaintiff, Patrick Hannon, was in the employ of the contractor; engaged in laying the pipe along the bottom of the ditch, and, while the engineer was present, superintending and directing the work, the sides of the trench, without any fault or negligence on the part of Patrick Hannon, in consequence of the wrongful act, neglect and default of the engineer and of the contractor in failing to properly shore the sides thereof, caved in and suffocated the son of plaintiff, etc.

A demurrer was successfully interposed to this petition on the ground that the "county is a political sub-division of the State of Missouri, and not a body corporate, either private or municipal, liable for the *laches* or misconduct of its servants or employees."

The case, as made by the pleadings, concedes the validity of the contract mentioned in the petition, and consequently that point is not open to discussion.

In the view we have taken of this case, it would be foreign, alike to our purpose and the facts admitted by the demurrer, to question the correctness of the proposition so generally concurred in elsewhere, asserted in Reardon vs. St. Louis County (36 Mo., 555) "that *quasi* corporations, created by the legislature for the purposes of public policy, are not responsible for the neglect of duties *enjoined on them*, unless the action is given by the statute." But as Mr. Justice Metcalf, in Bigelow vs. Randolph (14 Gray, 541), when speaking of the rule established in Mower vs. Leicester (9 Mass., 247), that a private action cannot be maintained against a *quasi* corporation for neglect of *corporate duty*, unless the action be given by the statute, very appropriately remarks : "*This rule of law, however, is of limited application.* It is applied in the case of towns only, to the neglect or omission of a town to perform those duties which are imposed on all towns without their corporate assent, and *not* to the neglect of those obligations which a town incurs when a special duty is imposed on it with its consent express or implied, or a special authority is conferred on it at its request. In the latter case a town is subject to the same liabilities for the neglect of those special duties to which *private* corporations would be if the same duties were imposed, or the same authority conferred on them, including their liability for the *wrongful neglect*, as well as the *wrongful acts, of their officers and agents.*"

Towns in New England, as mentioned in the above extract, occupy the same plane as *counties*, for, in Eastman vs. Meredith (36 N. H., 292), Perley, C. J., when referring to the former, says : "Towns are involuntary territorial and political divisions of the State, like counties, established for purposes of government and municipal regulation." A similar definition is given of *counties*. (Dill. Mun. Corp., vol. 1, § 10a.)

In the case at bar, the County of St. Louis was not engaged in the discharge of duties imposed alike by general law on all counties; duties whose performance, if neglected, might have been enforced by appropriate procedure for that purpose; but in the discharge of a self-imposed duty not enjoined by any law. And the test of the matter is this: That the county could not have been compelled to enter on the work for whose performance it contracted.

If the doctrine asserted in Bigelow vs. Randolph, *supra*, be the correct one, and it has received the approval of Mr. Justice Dillon in his work on Corporations (vol. 2, § 762); and if, as before stated, the county undertook the contract of its own volition, and not in the observance of a public duty imposed by general law, then there is no refuge from this result; that the county, in regard to the performance of that contract, must occupy the same attitude as if a mere private corporation, and the work thus contracted for should be deemed a private enterprise, undertaken for its own local benefit; and this is more especially the case as the work, at the time of the occurrence which resulted in this action, was being done on its own property. And it certainly can make no difference, in point of principle, whether the " special duty is imposed with its consent, express or implied," or whether, as in the present case, it voluntarily assumed the performance of that which, if imposed by the legislature, and assented to by the county, would have become a special duty. For it is the element of consent which attaches civil liability, with its attendant consequences, to the act done. In other words, as certain results flow from the acceptance by a *quasi* corporation of a special duty or a special authority, it is therefore the exercise alone of that volition which fixes its liability. Consequently, it must become quite immaterial whether the thing done, from which civil liability ensues, originates in the free act of the county in the first place, or whether it is legislative permission and its subsequent acceptance by the county, which gives origin to the act whose negligent performance produces the injury complained of.

Bailey vs. The Mayor, etc., of the City of New York (3 Hill., 531) was a suit brought to recover damages against the city for an injury to plaintiff's land in Westchester county, occasioned by the breaking away of a dam across Croton River, which dam, as well as the lands on which it was situated, was owned by the city.

It was alleged that the dam, which had been erected by certain water commissioners appointed by the State, for the purpose of introducing pure water into the city, was unskillfully built. The plan for the work had been, under the act of the legislature, submitted to the voters for their approval or rejection. It was approved; and the enterprise, which included the building of the dam, was then, in pursuance of the act, under the direction of the common council, prosecuted by the legislative commissioners at the expense of the city. The city was held liable; and these were the grounds on which Chief Justice Nelson, in a very able and exhaustive opinion, in which many authorities were cited and discussed, held the liability to be based: 1. That the legislative grant was for the purpose of private advantage and emolument, though the public might derive a common benefit therefrom; the corporation *quoad hoc* was to be regarded as a private company. 2. By accepting the charter, the defendants thereby adopted the commissioners as their own agents to carry on the work. The acceptance was entirely voluntary, for the State could not enforce the grant upon the defendants against their will. 3. A municipal corporation, in its private character as the owner of land and houses, is to be regarded in the same light as an individual, and dealt with accordingly.

The case finally went to the court for the correction of errors, where the judgment was affirmed. (2 Den., 433.) There was some diversity of opinion in that court, as to the ground on which the affirmance should be placed, nineteen members of that court voting therefor, against four for reversal; but only five of the number gave expression to their views in writing. The president of the senate gave an opin-

ion for reversal. It may be very reasonably supposed, however, that those voting for affirmance did so on the same grounds as those stated in the opinion delivered. Senators Barlow and Bockie were for affirmance on the second ground stated by the Chief Justice, that the defendants had made the water commissioners their agents by adoption, but they did not question the correctness of the other grounds relied on by the Supreme Court, and in this view Senator Hand also concurred, as well as in the other views taken by the Chief Justice. Chancellor Walworth based his vote for affirmance on the third ground given by the Chief Justice, though a careful perusal of his opinion will clearly show a substantial accord between his views and those of the Supreme Court, except as to the question of agency resulting from adoption. The opinion in that case, having been so thoroughly discussed and considered in two courts possessing appellate jurisdiction, is valuable as a precedent, and, notwithstanding subsequent criticism (Darlington vs. Mayor, etc., of New York, 4 Tiff., 164), has never been overruled. (Lloyd vs. Mayor, etc. of New York, 5 N. Y., 369.)

I am fully aware of the distinction so generally taken by the authorities between the liability of municipal corporations on the one hand, and the non-liability of *quasi* corporations under like circumstances on the other, though it has been very shrewdly observed in this connection, that "the court have been much perplexed respecting the principle on which to rest the distinction" (Dill. Mun. Corp., § 764) ; but I think it may with safety be asserted, that the admitted facts of this case disclose no sound reason why any such distinction should be taken here, nor why the county, in respect to its own property, should not be held answerable to the same rules, as would certainly prevail were a municipal or private corporation. or an individual, a party defendant. Such is evidently the drift of the above cited cases, and such must be the evident and inevitable result, if that reasoning be pushed to its natural and logical conclusion.

Again, the legislature, by the act approved February 8, 1870, recognized the County Lunatic Asylum as an existing, fact, and provided that the county court might commit the insane of that county to the county institution. (Laws App. to St. Louis Co., p. 202.) The legislature also, by an act approved April 1, 1872 (Id., 203), before the contract or work mentioned in the petition was made or entered upon, recited the fact that the asylum was built at the expense of the county, and appropriated $15,000 annually in support of "the humane objects contemplated by its establishment," thus giving the whole matter legislative sanction and recognition. So that if it be urged, that the argument is unsound which maintains, that a self-imposed duty is tantamount to a special duty imposed, or a special authority conferred by a legislative act, the ready reply is, that the acts of the legislature referred to bring the case fully within the principle applied by Mr. Justice Metcalf, in Bigelow vs. Randolph, *supra.*

This case is one of first impression in this State, and perhaps elsewhere; and, if it goes beyond adjudicated cases, it certainly does not go beyond the principles which those cases enunciate.

Holding these views, the judgment should be reversed, and the cause remanded. Judge Vories absent; the other judges concur.

## ON MOTION FOR RE-HEARING.

There has been a motion for a re-hearing filed in this cause, to which due consideration has been given. It will have been observed that, in the opinion delivered, our remarks were based on the case made by the pleadings. If, however, the facts of the case do not correspond with the admissions made by the demurrer, this is a matter of which advantage may hereafter be taken by traversing the allegations of the petition.

The motion is therefore overruled. Judge Vories absent; the other judges concur.