JOHN B. W. DAY & others *vs.* INHABITANTS OF GREENFIELD & others.

Franklin.   September 16, 1919.— October 18, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*School and School Committee.   Municipal Corporations,* Control of school grounds.

While, from the provisions of R. L. c. 42, § 49, that the school committee of a town, "unless the town otherwise directs, shall have general charge and superintendence of the school houses," the committee is given by implication a right, "unless the town otherwise directs," to occupy and care for the land upon which the school houses stand and that adjacent thereto so far as is reasonably necessary for the safe and convenient use of the school buildings and the health and comfort of the pupils, they have no right to prevent the town from carrying out a vote at a town meeting to move a band stand, the property of the town, from one school ground to another, where it does not appear that such removal injuriously affects the usefulness of the grounds from which it is to be taken or makes the unoccupied portion of the grounds to which it is to be moved inadequate for school purposes or that the use of such grounds for school purposes is seriously damaged.

BILL IN EQUITY, filed in the Superior Court on March 15, 1918, by the school committee of the town of Greenfield against the town of Greenfield and a committee appointed in accordance with a vote at a town meeting on March 4, 1918, for the removal of a band stand from the Main Street school grounds to the Federal Street school grounds.

A temporary injunction was denied. The suit was heard upon its merits by *Wait,* J. Material facts found by him are stated in

the opinion. By his order a decree was entered dismissing the bill; and the plaintiffs appealed.

*W. A. Davenport,* for the plaintiffs.

*F. L. Greene,* for the defendants.

DE COURCY, J. At the annual town meeting in March, 1918, the voters authorized the removal of a band stand, the property of the town, from the Main Street school grounds to the Federal Street school grounds in Greenfield. The plaintiffs, who are the school committee, brought this suit to restrain the defendants from carrying out the vote; a temporary injunction was denied; and after a hearing on agreed facts the bill was dismissed. The trial judge states, in his findings: "I am unable to find that the town at any time has distinctly given the school committee supervision of the grounds on which the school buildings stand exclusive of the town." Further: "The evidence, in this case, falls far short of proving that the portion of the Federal Street grounds left for school purposes is inadequate or that its use for school purposes is seriously damaged; or, further, that the usefulness of the Main Street grounds for school purposes is injuriously affected by the removal of the band stand." See St. 1913, c. 716, § 5. The main, if not the sole, question raised is whether the plaintiffs, constituting the school committee, have the right to prevent the town from placing this structure on the Federal Street lot.

The controlling statute, R. L. c. 42, § 49, declares "Every town shall provide and maintain a sufficient number of school houses, properly furnished and conveniently located for the accommodation of all children therein who are entitled to attend the public schools. . . . The school committee, unless the town otherwise directs, shall have general charge and superintendence of the school houses therein, shall keep them in good order, and shall procure a suitable place for the schools, if there is no school house, and provide fuel and all other things necessary for the comfort of the pupils therein, at the expense of the town."

The plaintiffs contend that this places the lot, on which the school house is erected, in the exclusive control of the school committee. It is significant, however, that the land is not mentioned in the statute. The power of the committee in reference to selecting teachers, prescribing the books to be used and courses

of study pursued, and regulating the internal affairs of the school, are expressly prescribed. Their power over the school grounds is left entirely to implication. As they are given charge of the school building ("unless the. town otherwise directs"), undoubtedly they have a right to occupy and care for the land so far as is reasonably necessary for the safe and convenient use of the building and the health and comfort of the scholars. *McKenna* v. *Kimball,* 145 Mass. 555. And this implied control of the grounds is likely to be more extensive under the recent legislation authorizing the use of school property for certain educational and recreation activities. St. 1913, c. 391, as amended by St. 1914, c. 538. And see St. 1911, c. 314. In many instances, as where the lot is small, this implied power necessarily embraces most of the incidents of ownership. But oftentimes there must remain extensive rights of ownership that can be exercised by the town, which has determined the location of its school houses and procured land therefor. R. L. c. 42, § 51. For example, the right of the town to lay a water pipe or sewer through the lot would scarcely be questioned. As the control of the committee over the school grounds arises from implication, it is limited to the reasonable exercise of the powers expressly given to them with reference to the control and use of the school buildings; especially where the town has acquired the land by purchase. A controversy between the town as a municipal corporation and the school committee as to the proper use of the school grounds was not anticipated by the Legislature, and the limit of their respective powers in this field of common interest was never defined. For the purposes of the present case it is enough to say, that the plaintiffs have shown no legal authority in the committee to prohibit the town from moving its band stand from the Main Street lot; and on the facts disclosed, especially the finding that placing the stand on the Federal Street lot will not injuriously affect the use of the grounds for school purposes, the consent of the school committee was not an essential prerequisite to the action of the town in removing the structure to its new location.

A further answer to the contention of the plaintiffs, that they have full and exclusive control of the school grounds, is that under the statute the charge even of the school houses is given to the committee only "unless the town otherwise directs." This lan-

guage appears in the sections of the earlier statutes which provide for the maintenance of the school houses, providing fuel, etc., but not in the sections giving to the committee "the general charge and superintendence of the school houses." Gen. Sts. c. 38, §§ 36, 40. Pub. Sts. c. 44, §§ 46, 50. The subject matter of both sections was embodied in § 49 of the R. L. c. 42. The clause quoted apparently contemplates the making of general provisions by the town itself to keep the school houses in good order, and provide fuel, etc. We do not now undertake to define its scope, and the limitations it places on the powers of the school committee, because in our opinion it is not applicable to the facts in the present case. But plainly it is inconsistent with the claim that the statute gives the school committee full and exclusive control over the school grounds.

Confining ourselves, then, to the agreed facts and the reasonable inferences to be drawn therefrom, we are of opinion that the school committee have shown no sufficient ground for legal objection to the action voted by the town.

*Decree affirmed with costs.*