MABEL WARBURTON *vs.* CITY OF QUINCY.

Norfolk.   February 4, 1941. — May 26, 1941.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*School and School Committee.   Municipal Corporations,* Liability for tort, Officers and agents, Public schools.   *Public Officer.*

The school committee of a city, in allowing use of part of a school building under their control for the presentation of a show by a local organization pursuant to G. L. (Ter. Ed.) c. 71, § 71, were public officers and not agents of the city notwithstanding that they charged the organization and turned over to the city a rental to cover the expenses of such use which, although reasonable in amount, was found to have "exceeded that insignificant incidental revenue which would not have affected the otherwise 'dominating public character of the operation of the building' "; and the city was not liable for injuries sustained by an invitee of the organization through a defect in the premises.

The school committee of a city operating under a Plan A charter are not changed from public officers to agents of the city by the fact that they are a department or board thereof within G. L. (Ter. Ed.) c. 43.

TORT.   Writ in the Superior Court dated September 30, 1935.

The action was heard by *Broadhurst,* J., who found "that the plaintiff suffered personal injuries because of a defect in a walk or path on the grounds of a school building owned by the defendant, which path she was using with reasonable care under the right of an association which had hired parts of said building and the incidental use of such grounds, and that such defect had existed long enough for the person or persons responsible for the condition of the path to discover and remedy it, or to take precautions against injury being caused by it," and found for the plaintiff in the sum of $1,200.   The defendant alleged exceptions.

*J. D. Smith,* City Solicitor, for the defendant.

*S. V. Weymouth & B. Fishgal,* for the plaintiff, submitted a brief.

COX, J.   A judge of the Superior Court, sitting without jury, found for the plaintiff, who was injured by reason of

a defect in the walk or path on the grounds of a school building owned by the defendant. The defendant's exceptions are to the denial of four requests for rulings. The findings of the trial judge are incorporated in the bill of exceptions as a "sufficient" statement of the case.

The method of government of the defendant is what is known as Plan A. See G. L. (Ter. Ed.) c. 43, §§ 46–55, inclusive, as amended. Provisions relating to the school committee are found in other sections of said chapter. Section 33 provides that the school committee, in addition to the powers and duties conferred and imposed by law upon it, shall have control of all school buildings and grounds connected therewith. G. L. (Ter. Ed.) c. 71, § 68, as inserted by St. 1934, c. 97, requires towns to provide and maintain a sufficient number of schoolhouses, and provides, among other things, that the school committee, unless the town otherwise directs, shall have general charge and superintendence of the schoolhouses. See *Day* v. *Greenfield*, 234 Mass. 31. Section 71 of said c. 71, in force at the time of the plaintiff's injuries (see now St. 1935, c. 193), provided as follows: "For the purpose of promoting the usefulness of public school property the school committee of any town may conduct such educational and recreational activities in or upon school property under its control, and, subject to such regulations as it may establish, and, consistently and without interference with the use of the premises for school purposes, shall allow the use thereof by individuals and associations for such educational, recreational, social, civic, philanthropic and like purposes as it deems for the interest of the community. . . . The use of such property as a place of assemblage for citizens to hear candidates for public office shall be considered a civic purpose within the meaning of this section. This section shall not apply to Boston."

In December, 1927, the school committee of the defendant "acting under statutory authority and assuming that the power given by said § 71 to establish regulations enabled it so to do" adopted regulations entitled "Rental of School Halls and Gymnasiums," and authorized the su-

perintendent of schools to let such buildings in accordance therewith. These regulations fixed a charge for the use of the hall and gymnasium upon the premises where the plaintiff was injured, and in accordance with them, except that apparently the rate had been reduced in the meantime, they were let to a local lodge of a fraternal organization for the presentation of a minstrel show on three evenings in March, 1935. The amount charged, $52.50, which also included lighting and janitor service, was paid by check to the order of the school committee and delivered to the city treasurer, who indorsed it in the name of the defendant and deposited it to the defendant's credit. Tickets for the show were sold by the lodge.

The judge ruled that the school committee was in charge of the school buildings and grounds, and of any repairs thereto. He denied as inapplicable to the facts found request numbered 4, that the defendant is not liable for torts of the school committee or its employees, as the school committee are public officers. Request numbered 3, that the school committee are public officers and not employees, agents or servants of the city he granted "as a general proposition of law, but . . . [he ruled] that where, as here, the school committee voluntarily enter upon a permitted function which redounds to the profit or corporate benefit of the municipality, they act as municipal agents." As to request numbered 1, that the use of the schoolhouse was a lawful use under G. L. (Ter. Ed.) c. 71, § 71, he stated: "Construing the word 'use' in this request to mean the rental of parts of the school building to a fraternal order for the purpose described, I will assume that such use was lawful under the statute, but I rule that although § 71 permits, it does not require that rental be charged for the use of any part of a school building." Request numbered 2, that the rental charge by the committee did not affect the dominating public character of the operation of the building and did not render the defendant liable for the torts of public officers in performing such public duty, was denied because the judge found "that the rental charged exceeded that insignificant incidental revenue which would

not have affected the otherwise 'dominating public character of the operation of the building' and transformed the public function of promoting the usefulness of a public school by allowing its use for recreational or social purposes into a *quasi* commercial enterprise."

It is settled that a school committee is a board of public officers whose duties are prescribed by statute, and, in the execution of its duties, the members act not as agents of the municipality but as public officers, *Hill* v. *Boston,* 122 Mass. 344; *McKenna* v. *Kimball,* 145 Mass. 555; *Day* v. *Greenfield,* 234 Mass. 31; see *Morse* v. *Ashley,* 193 Mass. 294, 296, and the plaintiff concedes that the school committee, in carrying out the provisions of said § 71 with regard to the use of school property by individuals and associations, act as public officers if no pecuniary consideration is involved. She contends, however, that the defendant is liable, not because the committee exercised a. permissive right to charge a rental, but because (1) the rental fee was more than incidental, (2) the defendant benefited directly from it, and (3) the substantial fee constituted an enforced contribution from the individual particularly benefited.

St. 1911, c. 367, which appears to be the first legislative act in relation to the use of school buildings for the purposes described in § 71 of said c. 71, provided, in substance, that the school committee "may" grant the temporary use of halls in school buildings "upon such terms and conditions" and for such public or educational purposes, "for which no admission fee is charged," as the school committee may deem wise. By St. 1912, c. 320, the law was amended, so far as here material, by inserting for the above quoted word "may" the word "shall," by making it apply to the use of rooms as well as halls, and by striking out the words "for which no admission fee is charged." The use which the committee was now required to grant was still to be "upon such terms and conditions" as they "may deem wise." St. 1913, c. 391, put back into the law the provision that no admission fee should be charged, and changed the phraseology to the extent of providing that the use allowed was "subject to such regulations as the

school committee shall establish." This act was amended by St. 1914, c. 538, which struck out the provision that no admission fee could be charged. The provisions of this last statute, with some change as to the arrangement of its clauses, are found in G. L. c. 71, § 71, where the use of the school property is made subject to such regulations as the school committee "may," instead of "shall" establish. (See St. 1923, c. 50.)

We think it is apparent that the reference in G. L. (Ter. Ed.) c. 71, § 71, to the school property "under its [the school committee's] control" has reference to the "control of all school buildings and grounds connected therewith" contained in G. L. (Ter. Ed.) c. 43, § 33, and we are of opinion that the history of said § 71 requires the conclusion that the Legislature, by the adoption of the words, "such regulations," had in mind the words "such terms and conditions" appearing in the earlier statutes, and that it did not intend any change in meaning. See *Ollila* v. *Huikari*, 237 Mass. 54, 56. The underlying purpose of said § 71 is declared to be "promoting the usefulness of public school property." In effect, said § 71 requires the school committee, consistently and without interference with the use of the premises for school purposes, to turn over buildings erected under peremptory statutory requirements as public school buildings to individuals and associations. Obviously, any such use at a given time would result in the exclusion of other individuals and associations. To that extent, at least, there would be some exclusion of some part of the public. Such use, and exclusion for that matter, reasonably would require some form of regulation. It seems apparent that such use would involve the city or town in additional expense necessarily incurred for the benefit of a limited number of the inhabitants who could charge an admission fee. In these circumstances, we are of opinion that the Legislature did not intend to, and did not, in fact, provide that a regulation requiring a reasonable charge for the use of the school property might not be made.

It has been held that, under a power to regulate, the requirement to take out a license is free from legal objection,

and where a license is lawfully required, a small fee may be imposed, designed not for revenue, but to cover reasonable expenses incident to the enforcement of the rule. *Commonwealth* v. *Plaisted*, 148 Mass. 375, 382, and cases cited. In *Commonwealth* v. *Stodder*, 2 Cush. 562, where an attempt was made to impose license fees varying in amount under a statute authorizing the city council to "regulate hackney coaches and other vehicles," it was held to be without authority upon the ground that what was attempted amounted to the imposition of a tax (page 572). But in that case *Boston* v. *Schaffer*, 9 Pick. 415, was distinguished. There a payment of money for a license for a theatrical exhibition was held a legal payment, and the by-law requiring the payment of money was held valid as a power "clearly" conferred by the statute authorizing the license of such exhibition "on such terms as the mayor and aldermen should think expedient." (See page 573.) In *Commonwealth* v. *Clay*, 224 Mass. 271, the sole question' decided was whether the city of Salem could require a permit and the payment of a fee therefor before one could occupy a stand in the market place, and it was held that it could by virtue of St. 1816, c. 103, which authorized the selectmen, when Salem was a town, "to make any rules and orders, not repugnant to the Constitution or laws of this Commonwealth, for the due regulation and government of the Market-house," and of vehicles used for marketing in the town, the powers thus conferred having been transmitted by its city charters after Salem became a city. See *Commonwealth* v. *Page*, 155 Mass. 227, 230; *Morley* v. *Police Commissioner of Boston*, 261 Mass. 269, 276. It is difficult to discover any distinction between the right to impose a fee designed not for revenue but to cover reasonable expenses incident to the enforcement of rules that may properly require the issuance of a license, and the requirement that a reasonable rental be paid for the use of a public building, as in the case at bar, to cover reasonable expenses incident to that use.

But the plaintiff contends, as the judge found, that the rental charge exceeded that insignificant incidental revenue

which would not have affected the otherwise dominating public character of the operation of the building and transformed the public function of promoting the usefulness of the public schools into a *quasi* commercial enterprise.

But, as is pointed out in *Sweeney* v. *Boston, ante,* 106, the decisive facts are that the school committee are public officers, and not officers or agents of the city itself. In principle the decision in that case is controlling here. This is not a case where a municipality has voluntarily engaged in an undertaking permissible under some statute, and, in the circumstances, it is difficult to think of a reasonable rental of the school property in terms of a commercial enterprise. It is true that the amount charged for the use of the building was paid by check to the order of the school committee and delivered to the city treasurer, who indorsed it in the name of the defendant and deposited it to its credit. But we are of opinion that these facts do not make the defendant liable. *Brown* v. *Nahant,* 213 Mass. 271, 274. The receipt of the money by the defendant's treasurer does not change the character and legal significance of the acts of the school committee in complying with an express legislative mandate.

The fact that under the defendant's charter the school committee is a department or board within the meaning of G. L. (Ter. Ed.) c. 43 (see *Eastern Massachusetts Street Railway* v. *Mayor of Fall River,* 308 Mass. 232) does not, in our opinion, in the circumstances disclosed, render its members agents of the defendant, as distinguished from public officers.

It is evident that the judge, in dealing with the defendant's requests for rulings, was influenced by his opinion that the statute did not require that a rental be charged, and by his findings that the school committee "voluntarily" entered "upon a permitted function which redounds to the profit or corporate benefit of the municipality." No account appears to have been taken by him of the right, as we understand it, to make a reasonable charge for the use of the school building, or of the mandatory provision of the statute that the committee "shall"

allow such use "as it deems for the interest of the community." When the committee has determined that the requested use is for the interest of the community, any discretion to disallow that use is at an end. Accordingly, we are of opinion that there was error in the manner in which the defendant's requests were dealt with. The exceptions are sustained and inasmuch as had the requests been ruled upon correctly a finding for the defendant would have followed, judgment is to be entered for the defendant.

*So ordered.*