281 P.2d 105

Edward SAWAYA, Jr., by his guardian ad litem, Edward Sawaya, and Edward Sawaya, Appellants,

v.

TUCSON HIGH SCHOOL DISTRICT NO. 1 OF PIMA COUNTY, Arizona, Appellee.

No. 5860.

Supreme Court of Arizona.

March 15, 1955.

Rehearing Denied April 12, 1955.

Cole & Barry, Tucson, for appellants.

Darnell, Robertson, Holesapple & Spaid, Tucson, for appellee.

PHELPS, Justice.

This is an appeal from a judgment of the Pima County Superior Court entered upon an order of dismissal of said cause of action upon the ground that the complaint failed to state a claim upon which relief could be granted.

The complaint alleges that on September 19, 1952, Edward Sawaya, Jr., attended a football game between the Amphitheatre High School located at Tucson, and Mesa High School, which was played at the stadium of the Tucson High School District, appellee herein. On this particular night the Tucson High School District had leased the stadium for the game for the sum of $300. The rental therefor was paid by the Amphitheatre High School District. The school districts involved constitute three separate and distinct entities. Those admitted to the stadium for the purpose of witnessing the football game including plaintiff paid an admission fee.

The complaint further alleges that defendant Tucson High School District had negligently allowed the railing on the east grandstand near the south end to fall into and remain in a state of disrepair so that it became dangerous, and that defendant had known for a long time prior thereto that said railing was in such disrepair and that it constituted a condition of danger.

That as a proximate result of the negligence of defendant in permitting such railing to become and remain in disrepair the plaintiff Edward Sawaya, Jr., fell from said grandstand to the ground and sustained serious and painful personal injuries, to wit, a fractured spine causing temporary total disability and permanent partial disability requiring him to incur heavy medical expense and to sustain loss of wages.

Upon appeal to this court plaintiff has presented only one assignment of error which reads as follows:

"The lower court erred in rendering judgment for defendant on defendant's motion to dismiss for the following reasons:

"1. All of the elements of liability are alleged in plaintiff's complaint;

"2. The ground upon which said motion was based, i. e., school district immunity from liability for torts is not applicable under the facts pleaded

since the defendant was acting in his proprietary capacity; and

"3. The said rule of immunity is contrary to the spirit of the laws of the State of Arizona, is against public policy, and is not required by legislative or constitutional authority."

In arriving at a decision in this case we are bound to consider as true all the material allegations of the complaint. The sole question to be determined here is whether a school district under the circumstances of this case is immune from liability for the torts of the school district in failing to keep the stadium in repair and safe for the use of the public.

■ We believe the great weight of authority to be that the school district is a quasi-public corporation and acts as a governmental agency for the sole purpose of furnishing educational facilities and administering the public educational system of the state and hence is not liable for the negligence of its officers, agents, or employees. We have so held in the case of School District No. 48 v. Rivera, 30 Ariz. 1, 243 P. 609, 45 A.L.R. 762. The case of Bang v. Independent School District No. 27 of St. Louis County, 177 Minn. 454, 225 N.W. 449, cites cases from many jurisdictions adhering to this view.

Many of the decisions sustaining the rule of nonliability admit that it is a harsh one but simply give as a reason for sustaining it that the school district was in the exercise of a governmental function at the time the tort was alleged to have been committed and the injury sustained. They justify their refusal to change the rule upon the ground that under the common law there was no liability for tort against a school district in the absence of statute creating such liability and that therefore the question is legislative and not judicial. A few of the cases to this effect are Lovell v. School District No. 13, Coos County, 172 Or. 500, 143 P.2d 236; Krutili v. Board of Education of Butler District, 99 W.Va. 466, 129 S.E. 486. There are many other jurisdictions which make the same pronouncement. They cling to this rule notwithstanding the fact that in the British Empire nonliability of school districts for their torts no longer obtains. See 160 A.L.R. p. 84, annotation II (f), School Tort Liability and cases cited under Note 14 thereof. Steveson v. Toronto Board of Education, 46 Ont.L.R. 146, 49 D.L.R. 673; Renwick v. Vermillion Center School District, 3 Alberta L.R. 291, and many others.

To escape the harshness of the rule of governmental immunity three states, New York, Washington and California, have enacted statutes creating liability for tort even though the tort was committed in the exercise of a governmental function. Other courts are taking the view that even though a county is merely a subdivision of the state the activities of which are primarily governmental, they do at times exercise private and proprietary functions

which result in loss of immunity from liability. Among these cases are Coburn v. San Mateo County, C.C., 75 F. 520; Hannan v. St. Louis County, 62 Mo. 313, decided in 1876 held that where a county was laying a water pipe from the water mains of a nearby city to an insane asylum, maintained by the defendant county, was in the exercise of a proprietary function and therefore liable. And in the case of Henderson v. Twin Falls County, 56 Idaho 124, 50 P.2d 597, 101 A.L.R. 1151, it was held that where a county had authority under a statute to build a hospital for the care of its poor and allowing the reception of pay patients therein, in maintaining such an institution it was acting in a proprietary capacity and was liable for injuries suffered by the complainant as the result of the negligence of a nurse. In the case of Jacoby v. Chouteau County, 112 Mont. 70, 112 P.2d 1068, 1070, it is held that the county was liable for damages for tort where it was operating a ferry for use of the general public in crossing a river for the reason that it was acting in a proprietary capacity. The judgment of the trial court awarding damages was sustained. In that case it quotes from 20 C.J.S., Counties, § 215, as follows:

"'On the other hand, a county, if amenable to suit, is liable for its torts when it is acting, not as a governmental agent, but as a private corporation, or in a proprietary capacity, or is performing special duties imposed on it with its consent, or voluntarily assumed by it, or when the tort amounts to an appropriation of property.'"

The court then proceeds to state that:

"Some courts do not recognize that a county ever performs proprietary functions, but the weight of authority is otherwise. * * *"

In the case of Rhoades v. School District No. 9, Roosevelt County, 115 Mont. 352, 142 P.2d 890, 160 A.L.R. 1, denying recovery for injuries sustained by a paying spectator while attending a basketball game at the gymnasium a dissenting opinion written by Justice Erickson criticising the adherence to the doctrine of nonliability upon the ground that it was based upon the divine right of kings who could do no wrong, is worthy of study. In the case of Bingham v. Board of Education of Ogden City, 118 Utah 582, 223 P.2d 432, decided in 1950 in which the majority opinion adhered to the doctrine based upon the divine right of kings and that the king can do no wrong, Justice Wolfe wrote a very strong dissenting opinion which should influence the courts of the United States in breaking away from a doctrine based upon a theory which is as much out of joint with the times as the theory that the earth is flat. Abraham Lincoln stated more than a century ago that

"It is as much the duty of government to render proper justice against itself, in favor of its citizens, as to administer the same between private in-

dividuals." Belli Modern Trial, Vol. 1, section 40, p. 228.

We believe that the majority of text book writers are of the view that such a doctrine has no application in this country especially in view of the fact that the reasons assigned by the courts for its perpetuation no longer exist. This seems to be especially true since liability insurance is available to state government and to its subdivisions for the protection of persons who may become injured as a result of a tort committed by an officer, agent or employee of government.

In view of the above observations we are certainly not inclined to extend the doctrine of nonliability of governmental subdivisions any further than we are required to do. Section 54–416, A.C.A. 1939, sets forth the powers and duties of the boards of trustees of school districts. Subsection 11 thereof provides that:

"The board may permit the use, under its direction, and subject to such conditions, rules and regulations as it may prescribe, of the school house or houses within the district as a civic center for such district, where the citizens, parent teachers' association, Camp Fire girls, Boy Scout troops, clubs and associations formed for recreational, educational, political, economic, artistic or moral activities of the district may engage in supervised recreational activities and where they may meet and discuss, from time to time, as they may desire, any and all subjects and questions which, in their judgment, may appertain to the educational, political, economic, artistic and moral interests of the citizens of the respective communities in which they reside; * * *."

This portion of section 54–416, supra, we construe to authorize the board of education to lease the stadium for the purposes for which it was leased. In reaching this conclusion we do not wish to be understood as overruling in any degree the case of Prescott Community Hospital Commission v. Prescott School District No. 1 of Yavapai County, 57 Ariz. 492, 115 P.2d 160. A cursory examination of that case will clearly distinguish it from the instant case. We hold that in leasing the stadium and receiving compensation therefor that the school district was in the exercise of a proprietary function and that in the exercise thereof it was and is liable for injuries sustained as a result of its negligence in the maintenance of said stadium.

The above rule will result in no hardship to a school district by diverting trust funds which otherwise would be used for educational purposes for the reason that school districts may protect themselves against such liability as above indicated.

The judgment of the trial court is reversed and the cause remanded with instructions to vacate its order dismissing plaintiff's complaint and that said complaint be reinstated.

LA PRADE, C. J., and UDALL and STRUCKMEYER, JJ., concur.

WINDES, Justice (dissenting).

I am unable to agree with the majority for the reason that I believe the opinion is based upon an erroneous assumption. A judicial decision is only as sound as the assumptions upon which it is founded.

The decision of the majority is bottomed upon the incorrect assumption that appellee school district was engaged in a proprietary function for the reason that under the provisions of section 54–416, subsection 11, A.C.A.1939, it made a charge for permitting the use of its facilities for the limited purposes allowed in said section. If this assumption be unsound, the majority opinion is not legally warranted.

The majority have invoked the familiar rule that municipalities acting in a private or proprietary capacity are not protected by the doctrine of state immunity. I am not prepared to say that the legislature might not properly enact a law that would call for the invocation of this rule against school districts but there is no such legislation in Arizona.

To keep from being led astray in determining whether an activity is proprietary or governmental, we must use the test that all courts use which is that if the undertaking by the municipal corporation is for the public good, it is a governmental undertaking. Wold v. City of Portland, 166 Or. 455, 112 P.2d 469, 473, 133 A.L.R. 1207. In that case the court said:

"The authorities are agreed, however, that when the undertaking by the city is not for the promotion of its own private interests as a corporate entity but for the public good, such undertaking is governmental."

In applying this doctrine to a school district, it must be kept in mind that school districts are not municipal but are quasi-public corporations and that there is a recognized distinction between a municipal corporation and a school district. A municipal corporation has a dual function, private or proprietary and governmental. 18 McQuillin, Municipal Corporations, section 53.23. A school district has a public function only, that of education. Prescott Community Hospital Commission v. Prescott School District No. 1 of Yavapai County, 57 Ariz. 492, 115 P.2d 160. The general rule is that school districts act only in a governmental capacity and are not liable unless expressly authorized by statute, since the establishment and maintenance of schools is a governmental function. 18 McQuillin, Municipal Corporations, sections 53–05 and 53.93. In the foregoing authority the rule is well phrased:

"The immunity from liability of quasi-public corporations is generally placed upon the ground of their involuntary and public character. They are usually treated as public or state agen-

cies, and their duties are ordinarily wholly governmental. They exercise the greater part of their functions as agencies of the state merely, and are created for purposes of public policy, and hence the general rule that they are not responsible for the neglect of duties enjoined on them, unless the action is given by statute."

We have announced the same principles for the state of Arizona. School District No. 48 v. Rivera, 30 Ariz. 1, 243 P. 609, 45 A.L.R. 762; Prescott Community Hospital Commission v. Prescott School District No. 1 of Yavapai County, supra. In the Rivera case, supra, we adopted the rule as stated in Indiana in Freel v. School City of Crawfordsville, 142 Ind. 27, 41 N.E. 312, 37 L.R.A. 301, as follows:

" 'They are involuntary corporations, organized not for the purpose of profit or gain but solely for the public benefit, and have only such limited powers as were deemed necessary for that purpose. Such corporations are but the agents of the state, *for the sole purpose of administering the state system of public education.* * * * In performing the duties required of them *they exercise merely a public function and agency for the public good for which they receive no private or corporate benefit.* School corporations, therefore, are governed by the same law in respect to their liability to individuals for the negligence of their officers or agents as are counties and townships. It is well established that where subdivisions of the state are organized *solely for a public purpose,* by a general law, that no action lies against them for an injury received by a person on account of the negligence of the officers of such subdivision, *unless a right of action is expressly given by statute.* Such subdivisions then, as counties, townships, and school corporations, are instrumentalities of government, and exercise authority given by the state, and are no more liable for the acts or omissions of their officers than the state.' " (Emphasis supplied.)

In the same case on the distinction between a school district and a municipal corporation, we stated:

"That there is a difference between the ordinary school district and a municipal corporation, and that the former is purely a state agency as the latter is not, cannot be doubted."

In the light of these rules, which are unquestionably the law in Arizona, if the collection of the charge herein was for the promotion of the public function for which the school districts are created, the district cannot be said to have been acting in a proprietary or private capacity in making such charge.

A superficial reading of the statute shows clearly that the only purpose of it is to permit the board to allow, under its direction and subject to such conditions as it may prescribe, the use of the school

facilities as a civic center for public benefit by various organizations such as parent-teachers associations, Boy Scouts or other associations formed for recreational, political, economical, artistic, or moral activities. The authorized use is limited to public, educational and cultural purposes. The use permitted here was to promote the athletic or educational interests of two other school districts, clearly an authorized public use.

The charge made by appellee district is not for the private benefit of the district. It must go into the school fund and cannot be expended by the district for any purpose except educational. Laws 1951, chapter 116, section 1, section 54–617, 1952 Supp. A.C.A.1939. Under this statute all receipts whether from rentals, operation of cafeterias or any other sources must go into the county treasury and be spent in the manner as any other school funds. This revenue is derived from an authorized public activity and can be used only for educational purposes. The district board is only carrying out its function as an agency of the state in promoting education, the only purpose for which it was organized. The fact that a school makes incidental charges for various activities does not convert it into a business enterprise. Mokovich v. Independent School District No. 22, 177 Minn. 446, 225 N.W. 292; Johnson v. Board of Road Com'rs of Ontonagon County, 253 Mich. 465, 235 N.W. 221; Daszkiewicz v. Board of Education of Detroit, 301 Mich. 212, 3 N.W.2d 71. In the Mokovich case, supra [177 Minn. 446, 225 N.W. 294], the court said:

"The fact of such charge being made would not appear sufficient to take the district out of its educational functions and convert its activity into one of a business or proprietary character. School districts may make incidental charges for other purposes. They may charge and receive tuition for non-resident pupils, buy and sell school books, *receive rent for authorized uses of school buildings,* and make other incidental charges. If the fact that such incidental charges are made places liability upon the district, then the rule of nonliability largely disappears." (Emphasis supplied.)

The Michigan court set forth in the Johnson case, supra [253 Mich. 465, 235 N.W. 223], and approved in the Daszkiewicz case, supra, the rule as follows:

"On this phase of the case it may also be noted that municipal corporations and other governmental agencies when performing a purely governmental function do not lose their immunity from liability for its negligent performance merely because they derive an income therefrom, provided the income is *only incidental to the main purpose of so functioning and aimed at covering the cost of the undertaking.*" (Emphasis supplied.)

If the majority opinion be sound, the state and all of its agencies are liable as having engaged in proprietary activities when they collect revenues from any source other than taxation and use the same in carrying out their governmental functions. A desire is expressed in the majority opinion not to extend the doctrine of state immunity. It is not a question of extending the doctrine of non-liability. The majority decision has the opposite effect. It is a question of imposing upon the state and its agencies liability for acts committed when performing a governmental function. The statute provides, without distinction as to source, that this class of income be combined with all other income of the district and used for the same purposes, i. e., maintenance of our schools. There is no possibility that the district as distinguished from the public derives any private benefit from this revenue. It derives the same benefit as results from tuition fees, operation of the school cafeteria or any other incidental revenue.

Other states have statutes such as our section 54-416, supra. So far as I have been able to determine, all of those which have passed upon the matter have ruled that a board in charging a fee for giving the public permission to use the school facilities is merely performing a governmental function. Lincke v. Moline Board of Education, 245 Ill.App. 459; Warburton v. City of Quincy, 309 Mass. 111, 34 N.E.2d 661.

Much space is taken up in expressions of disapproval of the law of state immunity when acting in a governmental capacity. It is the law in this and every other state except where waived by statute. Whether we agree with the wisdom of a law should not influence a decision. As stated by one of our most able jurists, the late Judge Baker, when this question was first submitted to the court: "It is our duty to declare the law as we find it, not to make it, even in accord with our own desires or wishes." State v. Sharp, 21 Ariz. 424, 189 P. 631, 633.

The judgment of the lower court should be affirmed.